**STATE EMPLOYEES' RETIREMENT SYSTEM, Petitioner**

v.

**Kenneth W. FULTZ, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 5, 2014.

Decided Jan. 9, 2015.

M. Catherine Nolan, Harrisburg, for petitioner.

Kenneth W. Fultz, pro se.

BEFORE: RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

State Employees' Retirement System (SERS) petitions for review of the Final Determination of the Office of Open Records (OOR) that granted, in part, and denied, in part, Kenneth W. Fultz's (Requester) appeal from SERS' partial denial of his Right–to–Know Law [1] (RTKL) Request (Request) for the names and home addresses of certain retirees or their beneficiaries. On appeal, SERS argues that the OOR erred by directing it to provide Requester with: (1) the home addresses of individuals or beneficiaries who reside at the same address as retired law enforcement officers or judges; (2) the home addresses of retired SERS members, who have attained superannuation age, or their beneficiaries, who are over the age of 60; and (3) the first names of law enforcement officers. Upon review, we affirm, in part, and reverse, in part.

## I. BACKGROUND

On or about September 12, 2013, Requester submitted the Request to SERS pursuant to the RTKL seeking the

[n]ames and addresses of all retirees who retired, received an annuity and/or withdrew their contributions to their retirement account, returned to state service for a second period of employment of two years or more and then retired a second time. Also, the names and addresses of beneficiaries of the above if the retiree has passed away. Information can be omitted for any returning retiree who repaid all funds received during the initial retirement. Requested for the years of 1998 through 2013.

(Request, R.R. at 7a.) After extending the response period pursuant to Section 902 of the RTKL,[2] SERS provided the name and addresses of 158 retirees. (SERS' Response, R.R. at 10a; Affidavit of Joseph A. Torta, Director of the Office of Member Services of SERS (Torta Affidavit) ¶ 12, R.R. at 82a.) SERS denied Requester access, pursuant to the exception set forth

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. 65 P.S. § 67.902. Section 902 provides that if an open records officer concludes that more time is needed to respond to a request for certain enumerated factors, the open records officer will notify the requester within five business days of receiving the request and advise the requester, *inter alia*, that the re- quest is being reviewed and also include "a reasonable date that a response is expected to be provided." *Id.* If the response is expected to exceed thirty days, "the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice." · 65 P.S. § 67.902(b)(2).

in Section 708(b)(6)(i)(C) of the RTKL,[3] to the names and addresses of: (1) all retired law enforcement officers and all retired judges; and (2) "all beneficiaries if they or the retiree has served as a law enforcement officer or judge." (SERS' Response, R.R. at 10a.) SERS denied Requester access, pursuant to the personal security exception set forth in Section 708(b)(1)(ii) of the RTKL,[4] to the names and addresses of: (1) all retirees "who have attained superannuation age and all beneficiaries who are at least 60 years old or those for whom [SERS did] not know their age"; and (2) all retirees who directly notified SERS "of the existence of specific threats to their personal safety and security" pursuant to the personal security exception set forth in Section 708(b)(1)(ii). (SERS' Response, R.R. at 10a–11a.)

Requester filed an appeal with the OOR. (OOR Appeal, R.R. at 1a–6a.) The OOR invited the parties to supplement the record.[5] In response, SERS explained that it denied access, pursuant to the personal security exception, to the names and home addresses of retirees who retired after reaching superannuation age because individuals at or over the age of 60 are statistically more likely to suffer some degree of cognitive impairment; therefore, the release of this information would likely cause these individuals "to suffer financial fraud, financial exploitation, financial abuse or theft." (SERS' OOR Response at 3, 9, R.R. at 34a, 40a.) SERS contended that: (1) "[f]inancial abuse and financial exploitation of older people is a widely recognized problem with broad financial, legal and policy implications"; and (2) "[s]ome older people are vulnerable to financial fraud, financial exploitation and financial abuse." (SERS' OOR Response at 4–9, R.R. at 35a–40a.) In support of this contention, SERS attached the sworn Affidavits of: (1) Jason Karlawish, M.D., "a tenured professor of medicine, medical ethics and

3. 65 P.S. § 67.708(b)(6)(i)(C). Section 708(b)(6)(i)(C) exempts from access to a requester "[t]he home address of a law enforcement officer or judge." *Id.*

4. 65 P.S. § 67.708(b)(1)(ii). Section 708(b)(1)(ii) exempts from access to a requester "[a] record, the disclosure of which ... would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." *Id.*

5. The OOR also "directed SERS to notify any third parties of their ability to participate" in Requester's appeal and, as directed, SERS notified 1,178 individuals whose names and addresses SERS did not disclose to Requester. (Final Determination at 2–3; SERS' Proof of Notice, R.R. at 59a–61a.) In response, the OOR received submissions from 35 individuals who wished to participate in Requester's appeal as persons with a direct interest. (Final Determination at 4.) These requests to participate are not in the certified record. In regard to the individuals who requested to participate because they had obtained superannuation age and/or were over the age of 60, the OOR determined that these individuals were already adequately represented by SERS. (Final Determination at 4.) Thus, the OOR determined that "[t]he direct interest participation of these individuals would not provide any information probative to the OOR's final order that has not already been advanced by SERS on appeal." (Final Determination at 4–5.) The OOR granted participation to three individuals who requested to participate because they were either retired law enforcement officers or judges, or resided with a law enforcement officer or judge. (Final Determination at 5.) The OOR granted participation to seven individuals who requested to participate because the disclosure of their names and addresses would pose a threat to their personal security pursuant to Section 708(b)(1)(ii) of the RTKL. (Final Determination at 5.) In total, the OOR granted participation to ten individuals as directly interested parties. (Final Determination at 6.) Only one of these 10 individuals submitted a statement to the OOR asserting that her home address is exempt from disclosure because she is a 68 year old retiree. (Final Determination at 6.)

health policy at the University of Pennsylvania, Perelman School of Medicine, specializing in Alzheimer's disease and other cognitive disorders," (Karlawish Affidavit ¶ 1, R.R. at 47a); and (2) J. Kenneth Brubaker, M.D., "Medical Director of the Commonwealth of Pennsylvania, Department of Aging[,] since 2010," (Brubaker Affidavit ¶ 1, R.R. at 53a). SERS also explained that disclosing the home addresses of retirees who have reached superannuation age would be a breach of its fiduciary duty. (SERS' OOR Response at 11, R.R. at 42a.) Finally, SERS asserted that it correctly denied access to the home addresses of retired law enforcement officers, judges, and their beneficiaries under the express exception set forth in Section 708(b)(6)(i)(C) of the RTKL. (SERS' OOR Response at 14, R.R. at 45a.)

Requester submitted a reply to SERS' OOR Response challenging SERS' contention that it properly denied access to the requested home addresses pursuant to the personal security exception because of a potential risk of financial fraud, exploitation, or abuse. (Requester's Reply to SERS' OOR Response, R.R. at 65a–74a.) Requester contended that SERS failed to submit any real evidence to support its denial pursuant to the personal security exception. (Requester's Reply to SERS' OOR Response at 3, R.R. at 67a.) Referring to the Affidavits of Dr. Karlawish and Dr. Brubaker, Requester asserted that denying access to the home addresses "can-

not be justified on a generic opinion as to a potential risk to just one or two class members out of over 1,500 class members." (Requester's Reply to SERS' OOR Response at 2, R.R. at 66a.) Requester also cited to statistics purporting to show that because individuals continue to work beyond the age of 59, SERS' assertions that individuals over the age of 59 are likely to suffer cognitive impairment is contrary to societal norms. (Requester's Reply to SERS' OOR Response at 3–10, R.R. at 67a–74a.)

After reviewing SERS' OOR Response, the OOR advised SERS that it required additional information in the form of documentary evidence and affidavits to support its reasons for withholding the requested home addresses. (Letter from OOR to SERS and Requester (December 12, 2013), R.R. at 76a–77a.) The OOR stated that it required "all factual allegations be supported by a statement made under penalty of perjury by a person with actual knowledge." (Letter from OOR to SERS and Requester (December 12, 2013) at 1, R.R. at 76a.) The OOR explained that "[g]iven that this appeal involves claims of personal security issues, it is incumbent upon SERS to provide as much detailed information to support its position." (Letter from OOR to SERS and Requester (December 12, 2013) at 2, R.R. at 77a.)

In response, SERS submitted the sworn Affidavit of Joseph A. Torta, Director of the SERS' Office of Members Services.[6]

---

**6.** Director Torta states in his Affidavit, in part, as follows:

> 25. SERS denied access to the requested names and home addresses of 1,493 SERS members who are both retired and superannuated under Section 708(b)(1)(ii) of the RTKL on the basis that disclosure of those records [ ] "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal

security of" the individual SERS member or another individual at that address.
> 26. SERS denied access to the names and home addresses of 37 beneficiaries because they are at least age 60 under Section 708(b)(1)(ii) of the RTKL on the basis that disclosure of those records [ ] "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of" the individual

(Torta Affidavit, R.R. at 80a–86a.) SERS did not submit any other documentary evidence or affidavits in support of its partial denial of Requester's RTKL Request.

Upon review, the OOR denied access to the home addresses of retired judges and law enforcement officers pursuant to the express exception found in Section 708(b)(6)(i)(C) of the RTKL. (Final Determination at 8.) However, the OOR determined that Section 708(b)(6)(i)(C) does not preclude the disclosure of the names of retired judges and law enforcement officers. (Final Determination at 8.) The OOR further determined that SERS did not raise any exception that would require that these individuals' beneficiary information be withheld. (Final Determination at 8.) The OOR pointed out that this Court has held that the first names of corrections officers are not public records pursuant to the personal security exception citing our unreported opinion in *Stein v. Office of Open Records*, 2010 WL 9511502 (Pa. Cmwlth., No. 1236 C.D.2009, filed May 19, 2010). (Final Determination at 9.) The OOR further pointed out that Section 708(b)(6)(i)(B) of the RTKL [7] exempts beneficiary information from disclosure. (Final Determination at 9.) The OOR, however, determined that SERS did not raise the personal security exception with respect to the names of law enforcement officers or the exception set forth in Section 708(b)(6)(i)(B) with respect to beneficiary information. (Final Determination at 9.) Therefore, because the OOR had presented SERS with two opportunities to assert grounds for denial and SERS did not raise those exceptions, the OOR determined that it was constrained to grant access to the names of retired law enforcement officers and beneficiary information for both retired law enforcement officers and judges. (Final Determination at 8–9.)

Next, the OOR determined that SERS failed to establish that the home addresses of retirees who had reached superannuation age were exempt from disclosure pursuant to the personal security exception because people over the age of 60 are more likely to suffer from cognitive impairment and financial exploitation. (Final Determination at 10–13.) The OOR pointed out that "the risk of harm must be material, real, and ample to be susceptible and more than a mere belief that the release of a record would cause substantial and demonstrable risk of harm" is necessary to pre-

---

SERS member or another individual at that address.

27. SERS denied access to the names and home addresses of 174 SERS annuitants who are retired law enforcement officers or who are the beneficiaries of law enforcement officers under Section 708(b)(6)(i)( [C] ).

28. The group of 174 SERS annuitants who are retired law enforcement officers or beneficiaries of law enforcement officers includes at least 16 former corrections officers or their beneficiaries.

29. SERS denied access to the names and home addresses of 18 SERS members who are retired judges under Section 708(b)(6)(i)( [C] ).

(Torta Affidavit ¶¶ 25–29, R.R. at 84a–85a.) Director Torta stated further that SERS denied access to the names and home addresses of eleven annuitants because each of these "members is retired, over superannuation age and over age 60." (Torta Affidavit ¶ 30, R.R. at 85a.) SERS also denied access to the records of one of these eleven annuitants "on the additional basis that he is a retired law enforcement officer." (Torta Affidavit ¶ 31, R.R. at 85a.) Lastly, Director Torta stated that no records of the eleven annuitants "were denied on the basis of individual security threats; however, SERS does not assert that no individual security threat to those individuals exists." (Torta Affidavit ¶ 32, R.R. at 86a.)

7. 65 P.S. § 67.708(b)(6)(i)(B). Section 708(b)(6)(i)(B) exempts from access to a requester "[a] spouse's name, marital status or beneficiary or dependent information." *Id.*

clude disclosure. (Final Determination at 13.) The OOR concluded that SERS' evidence "merely states that these individuals are 'more likely' to suffer cognitive impairment" and that "[t]his general and broad-sweeping approach to withholding records of individuals of a certain age, without more concrete evidence of how each individual's address that was withheld is exempt under Section 708(b)(1)(ii)," did not satisfy SERS' burden pursuant to the RTKL. (Final Determination at 13.)

Finally, the OOR determined that only one retiree's home address should be withheld pursuant to the personal security exception based on Director Torta's Affidavit that was submitted by SERS. (Final Determination at 13.) The OOR found that the information provided by SERS showed that this retiree notified SERS that he had received numerous death threats, which were investigated by the Pennsylvania State Police. (Final Determination at 13.) However, the OOR found that there was insufficient evidence to show that the home addresses should be withheld of other retirees who claimed that the release of their addresses would be a threat to their personal security. (Final Determination at 14.)

■ Accordingly, the OOR granted, in part, and denied, in part, Requester's appeal. (Final Determination at 14.) The OOR directed SERS to provide Requester with all responsive records except the home addresses of judges, law enforcement officers and corrections officers and any responsive record related to the one retiree exempt pursuant to Section 708(b)(1)(ii) of the RTKL. (Final Determination at 14.) SERS now petitions this Court for review of the OOR's Final Determination.[8]

## II. SERS' APPEAL

### A. Home Addresses of Beneficiaries of Law Enforcement Officers or Judges

■ In support of this appeal, SERS first argues that the OOR erred by directing the disclosure of the home addresses of other individuals or beneficiaries residing with law enforcement officers or judges. SERS asserts that the plain and specific language of Section 708(b)(6)(i)(C) of the RTKL shields the addresses of retired law enforcement officers and judges from public access. SERS argues that the intent of the specific exception set forth in Section 708(b)(6)(i)(C) is not only to protect the individual law enforcement officer or judge, but also his or her family members from being exposed to harm.

■ The RTKL is remedial in nature and "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pennsylvania State Police v. McGill*, 83 A.3d 476, 479 (Pa.Cmwlth.2014). Thus, the RTKL must be construed to maximize access to public records that are in an agency's possession. In keeping with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed. *Id.*

Section 708(b)(6)(i)(C) of the RTKL expressly exempts from access by a requester "[t]he home address of a law enforcement officer or judge." 65 P.S. § 67.708(b)(6)(i)(C). By providing this blanket exemption, the General Assembly recognized that the home addresses of

---

8. This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 621 Pa. 133, 75 A.3d 453, 477 (2013).

these at-risk individuals "should not and, under the law, will not be subject to disclosure." *Delaware County v. Schaefer*, 45 A.3d 1149, 1153 (Pa.Cmwlth.2012) (en banc). It is clear that the purpose of this unconditional protection afforded to the home addresses of law enforcement officers and judges is to reduce the risk of physical harm/personal security to these individuals that may arise due to the nature of their job duties. Permitting access to the home address of a law enforcement officer or judge in response to a RTKL request seeking the address of a family member or beneficiary of one of these at-risk individuals would erode the purpose of this express exemption. *See Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 441 (Pa.Cmwlth.2011) (recognizing that "the redaction of the troopers' home addresses from the requested documents will go a long way toward quelling concerns expressed about troopers' families and property being exposed to harm"). Thus, we hold that the specific exception set forth in Section 708(b)(6)(i)(C) exempts from access the home addresses of law enforcement officers and judges even when the requester is seeking the address of an individual who also ·resides at the exempt address and that the OOR erred by directing the disclosure of these home addresses.

## B. Home Addresses of Retired Members who Attained Superannuation Age and Beneficiaries over Age of 60.

█ Next, SERS argues that it properly denied Requester access to the home addresses of SERS members who are retired and have attained superannuation age, and their beneficiaries over the age of 60, pursuant to the personal security ex-

ception set forth in Section 708(b)(1)(ii) of the RTKL.[9] SERS contends that the Request sought information on a particular class of its members, those who are both superannuated and retired, or their beneficiaries over age 60; therefore, it should likewise be able to apply the personal security exception to these members on a class-wide basis. SERS contends that the only way that the personal security exception can be meaningful where a requester seeks voluminous records is if the agency is permitted to apply the exception in a way reasonably calculated to exempt those for whom the risk of harm is both substantial and demonstrable. SERS asserts that its denial in this matter was substantiated by the reasonable likelihood that this class of vulnerable retirees, or their beneficiaries, would suffer financial fraud, financial exploitation, financial abuse, or theft as a result of such disclosure.

SERS believes this class-based approach is particularly appropriate here because the Request is for a statutorily defined class of members, those of superannuation age and retired or their beneficiaries over the age of 60, who are more likely to suffer an age-related risk of harm. This age-related risk of harm is outlined in the sworn Affidavits of two experts that SERS submitted into the record. These experts conclude, based on statistical data, that aging causes many people to experience a decline in cognitive ability, that people over the age of 60 are likely to experience such a decline, and may also suffer from dementia and Alzheimer's disease. (Karlawish Affidavit ¶¶ 16–17, R.R. at 50a; Brubaker Affidavit ¶¶ 11, 17, R.R. at 54a–55a.) This decline in cognitive ability increases the risk of someone over the age of 60· becoming a victim of elder financial

9. Pursuant to Director Torta's Affidavit, SERS denied Requester access to the home addresses of 1,578 retired members or annuitants who have attained superannuation age and their beneficiaries who are over age 60. (Torta Affidavit ¶¶ 25–26, 30, R.R. at 84a–85a.)

abuse and exploitation, which is a widely recognized problem in today's society. (Karlawish Affidavit ¶¶ 18–23, R.R. at 50a–51a; Brubaker Affidavit ¶¶ 12–20, R.R. at 54a–56a.) Because many members receive paper checks on publicly posted dates, the additional threat of theft of annuity payments is a serious risk of harm that could occur if the home addresses are disclosed. (Karlawish Affidavit ¶ 24, R.R. at 52a; Brubaker Affidavit ¶ 21, R.R. at 56a.) SERS believes that the home addresses, combined with other publicly accessible information about SERS' retired members who are over the age of 60, will expose them to financial exploitation and compromise their financial security.

We recognize that the risks to the elderly outlined by SERS are serious problems that our society is taking steps to overcome.[10] By its terms, the personal security exception does not specifically provide for a blanket exception for certain classes or large groups of individuals. Notwithstanding, this Court has held that an agency may establish the existence of an exception covering a large group of individuals based upon evidence that establishes that the release of certain information poses a likelihood of a substantial and demonstrable risk to the personal security of that group of individuals.

In *Purcell v. Governor's Office of Administration,* 35 A.3d 811 (Pa.Cmwlth. 2011), the requester sought a list of all active state employees, which totaled between 65,000 and 70,000 employees, their salary records, and full birth dates from the Governor's Office of Administration (GOA). *Id.* at 812. The GOA's open records officer granted requester access to the requested information, except access to the birth date of each state employee pursuant to the personal security exception. *Id.* at 812–13. The requester appealed and the GOA submitted into the record a letter from the Philadelphia District Attorney and affidavits from security experts, that partly relied upon statistical reports, to support its position that the state employees' full birth dates were exempt from disclosure. *Id.* This evidence purported to show that the release of the employees' full birth dates would result in a substantial and demonstrable risk to the employees' personal security because disclosure would substantially heighten the risk of identity theft. *Id.* at 813–14. Upon review, the OOR determined that the state employees' birth dates were not exempt from disclosure. *Id.* at 814.

On further appeal, this Court, acting as the fact-finder, reviewed the GOA's submissions, accepted as credible the expert opinions and the use of statistical data on the risk of identity theft, and found that the GOA met its burden of proving that the employees' full birth dates were exempt from disclosure pursuant to the personal security exception. *Id.* at 818. In making these determinations, we "did not embrace the credibility approach of the OOR" requiring "specific facts of a risk to personal security, such as prior threats to an individual." *Id.* We concluded that, while the OOR's approach may be appropriate under other circumstances, it was "an impractical standard when dealing with the records of almost 70,000 state

---

**10.** For example, *see* Report and Recommendations of the Elder Law Task Force, November 2014 (recognizing that many adults live long, productive, and healthy lives well beyond the age 60 but recommending, *inter alia,* that the Pennsylvania Supreme Court open an Office of Elder Justice in the Courts to address issues in the courts and other government agencies involving abuse, neglect, and financial abuse or exploitation of persons over the age of 60), available at http://www.pacourts.us/courts/supreme-court/committees/supreme-court-boards/elder-law-task-force.

employees." *Id.* We held that under the circumstances, as presented, "the use of statistics and expert opinion [was] not only reasonable, it [was] possibly the only available evidence of a risk to personal security of such a large and diverse group." *Id.* Additionally, we held that the experts' opinions were not hypothetical or conjectural, but rather "stated with sufficient certainty to be competent evidence." *Id.* at 818–19.

Although, in this case, SERS does not cite to *Purcell* as support for its assertion that the personal security exception should be applied on a class-wide basis to its members, who are both superannuated and retired, or their beneficiaries over age 60, we find it instructive. Here, SERS submitted three sworn Affidavits in support of its denial. However, unlike the evidence in *Purcell,* the Affidavits submitted by SERS do not contain sufficient information to support a finding that disclosure of the home addresses of this particular group of retired members and their

beneficiaries would be reasonably likely to result in a substantial and demonstrable risk of harm to their personal security.

For example, Director Torta's Affidavit does not contain any statements with regard to how the disclosure of the home addresses of this group of individuals would be reasonably likely to result in a substantial and demonstrable risk of harm to their personal security. (Torta Affidavit, R.R. at 80a–86a.) Director Torta merely quotes verbatim the language of the personal security exception as set forth in the RTKL. (Torta Affidavit ¶¶ 13, 25–26, 30, R.R. at 82a, 84a–85a.) In addition, the Affidavits of Dr. Karlawish and Dr. Brubaker offer only general and broad-sweeping conclusions that aging causes a decline in cognitive ability, that a certain percentage of the population over the age of 60 are more likely to experience such a decline, and that individuals over the age of 60 may also suffer from dementia and Alzheimer's disease.[11] ·(Karlawish Affida-

---

11. The Affidavits of Dr. Karlawish and Dr. Brubaker are virtually identical. Dr. Karlawish's Affidavit states, in pertinent part, as follows:

7. I am aware of a [RTKL] request submitted to [SERS], for the names and home addresses of all SERS members.

8. I am aware that SERS denied access to the home addresses of all retired members of SERS who have attained superannuation age because the disclosure of those addresses would be reasonably like[ly] to result in a substantial and demonstrable risk of harm to or the personal security of such SERS members.

9. I am aware that the superannuation age for most SERS members is age 60.... I am also aware that the superannuation age for some members is older than age 60.

10. As human beings age, many will experience some degree of decline in their cognitive abilities ranging from mild cognitive impairment ("MCI") to more serious cognitive impairment, including dementia most commonly caused by Alzheimer's disease and other neuro degenerative conditions.

11. MCI causes a slight but noticeable and measurable decline in cognitive abilities, including memory and thinking skills. Long-term studies suggest that 10% to 20% of people aged 65 and older may have MCI.

12. One of the earliest symptoms of cognitive impairment is the impaired ability or inability to manage one's finances.

13. Cognitive impairment typically progresses to dementia as a person ages and rarely lessens or resolves. The risk of such progression is approximately 15% per year.

14. Research shows that approximately 10% of the general population over age 70 has cognitive impairment.

15. Research shows that approximately 20% of the general population over age 80 has cognitive impairment.

16. It is my professional opinion, based on my research and the research of other experts in Alzheimer's disease, that the risk of developing cognitive impairment increases after age 60, and that by age 80 the risk of cognitive impairment increases by approximately 5% per year.

17. It is my professional opinion, based on my research and the research of other experts in Alzheimer's disease, that people over age 60 are more likely to experience cognitive impairment, including dementia and Alzheimer's disease than are younger members of the population.

18. It is my professional opinion, based on my research and the research of other experts in Alzheimer's disease, that even before being diagnosed with dementia, people with MCI have problems that affect their ability to manage money, one of the Instrumental Activities of Daily Living (sometimes referred to as IADLs). Among people with dementia, impairment of the ability to handle one's financial affairs is universal.

19. It is my professional opinion, based on my research and the research of other experts in Alzheimer's disease, that individuals affected by cognitive impairment or caused by either MCI or dementia are more vulnerable to financial exploitation and financial fraud than are other members of the population who are not similarly impaired.

20. Cognitive impairment is underdiagnosed because of environmental complexities, including primary care physicians misidentifying symptoms as normal aging and adult children being reticent to accept that special care for a parent is needed.

21. Patients frequently understate the presence or severity of cognitive impairment.

22. People with cognitive impairment often lack the ability to identify situations and circumstances that are unsafe to their physical well-being.

23. Individuals experiencing cognitive impairment are particularly vulnerable to financial exploitation and financial fraud.

24. Publicly disclosing the home addresses of superannuated SERS retirees, who, by definition receive monthly annuity payments on publicly posted dates, would be reasonably likely to result in a substantial and demonstrable risk of harm to or the personal security of some members of that class.

(Karlawish Affidavit ¶¶ 7–24, R.R. at 49a–52a.) Dr. Brubaker's Affidavit states, in pertinent part, as follows:

8. I am aware of a [RTKL] request submitted to [SERS], for the names and home addresses of all SERS members.

9. I am aware that SERS denied access to the home addresses of all retired members of SERS who have attained superannuation age because the disclosure of those addresses would be reasonably likely to result in a substantial and demonstrable risk of harm to or the personal security of such SERS members.

10. I am aware that the superannuation age for most SERS members is age 60.... I am also aware that the superannuation age for some members is older than age 60.

11. As human beings age, many will experience some degree of decline in their cognitive abilities ranging from mild cognitive impairment ("MCI") to more serious conditions, including dementia most commonly caused by Alzheimer's disease and other neuro degenerative conditions.

12. Early symptoms of cognitive impairment frequently manifest in the impaired ability or inability to manage one's finances.

13. The decline in cognition typically progresses as a person ages and rarely lessens or resolves.

14. A hallmark of the early stages of cognitive impairment is denial by the patient and attempts to compensate and disguise signs of impairment for fear of being placed in a care facility, losing driving privileges, losing legal ability to engage in financial transactions and otherwise losing personal independence.

15. People with cognitive impairment often experience anosognosia—an impaired awareness of one's illness. In laymen's terms, "I don't know what I don't know."

16. People with cognitive impairment often lack the ability to identify situations and circumstances that are unsafe to their physical well-being.

17. It is my professional opinion that people over age 60 are more likely to have some level of cognitive impairment, including dementia and Alzheimer's disease[,] than are younger members of the population.

18. It is my professional opinion that people affected by cognitive impairment are more vulnerable to financial exploitation and financial fraud than are other members of the population who are not similarly impaired.

19. Cognitive impairment is underdiagnosed because of the environmental complexities, including primary care physicians mis-identifying symptoms as normal aging and adult children being reticent to accept that special care for a parent is needed.

vit, R.R. at 47a–52a; Brubaker Affidavit, R.R. at 53a–56a.)

. More importantly, Dr. Karlawish and Dr. Brubaker do not opine that the risk to the personal security by the disclosure of the home addresses is a risk that is common to all of the SERS members and their beneficiaries who are over the age of 60. To the contrary, these Affidavits only support a statistical likelihood of increased vulnerability from age-related cognitive impairment to a certain percentage of the population. For example, Dr. Karlawish opines that: (1) "[l]ong-term studies suggest that 10% to 20% of people aged 65 and older may have [mild cognitive impairment]"; (2) "[r]esearch shows that approximately 10% of the general population over age 70 has cognitive impairment"; (3) "[r]esearch shows that approximately 20% of the general population over age 80 has cognitive impairment"; and (4) "by age 80 the risk of cognitive impairment increases by approximately 5% per year." (Karlawish Affidavit ¶¶ 11, 14–16, R.R. at 49a–50a.) Dr. Karlawish's and Dr. Brubaker's Affidavits do not contain any averments that the SERS members and their beneficiaries over age 60 whose addresses are requested here fall within these percentages such that they would be subject to the same potential risk to their personal security. This is unlike the evidence submitted in *Purcell* that addressed all employees without any distinguishing factors among the approximately 70,000 employees.

Therefore, in the present matter, we conclude that SERS did not meet its burden, through the submission of sufficient competent evidence, of showing the likelihood of a substantial and demonstrable

risk to SERS members and their beneficiaries over the age of 60 by the disclosure of the requested home addresses.

■ Next, SERS argues that the OOR's determination that it did not meet its burden, because the evidence SERS submitted was too general and broad-sweeping is incongruous with its denial of the participation requests of approximately 23 individuals with a direct interest. SERS points out that the OOR denied these individuals' requests to participate in Requester's appeal because they " 'would not provide any information probative to the OOR's final order that has not already been advanced by SERS on appeal.' " (SERS' Br. at 21 (quoting Final Determination at 4–5).) SERS contends that the OOR exceeded its statutory authority, which permits the OOR to limit evidence that is cumulative, by denying the individual requests to participate and then holding that SERS' evidence was insufficient to prove that the names and home addresses of these individuals were exempt pursuant to the personal security exception.

Pursuant to Section 1102(a)(2) of the RTKL, the OOR may admit evidence into the record that it believes will "be reasonably probative and relevant to an issue in dispute." 65 P.S. § 67.1102(a)(2). "The appeals officer may limit the nature and extent of evidence found to be cumulative." *Id.* As noted previously, in response to a notification from SERS, several individuals filed a request to participate in Requester's appeal because they had a direct interest as a SERS member who was superannuated and/or over the age of 60. (Final Determination at 4.) However, cop-

---

20. People experiencing cognitive impairment are particularly vulnerable to financial exploitation and financial fraud.

21. Publicly disclosing the home addresses of superannuated SERS retirees, who, by definition receive monthly annuity pay-

ments on publicly posted dates, would be reasonably likely to result in a substantial and demonstrable risk of harm to or the personal security of some members of that class.

(Brubaker Affidavit ¶¶ 8–21, R.R. at 54a–56a.)

ies of these requests to participate and the OOR's actual denials are not part of the certified record in this matter. Therefore, this Court is unable to review these requests and the OOR's denials to determine whether the OOR exceeded its authority or abused its discretion by denying these individual requests to participate for the reason given by the OOR in its Final Determination. In light of the OOR's holding that SERS' evidence was too general and broad-sweeping to meet its burden, it may very well be that these direct interest participants put forth evidence that would be probative to the issue of whether their names and home addresses should be exempt from disclosure pursuant to the personal security exception.

Accordingly, the OOR erred by directing SERS to disclose the names and home addresses of the approximately 23 individuals whose requests to participate in the proceedings OOR denied, without permitting them to demonstrate whether such disclosure would be exempt pursuant to the personal security exception. We will, therefore, remand this matter for the OOR to determine whether the approximately 23 individuals' names and home addresses should be exempt from disclosure pursuant to Section 708(b)(1)(ii) of the RTKL.

### C. First Names of Law Enforcement Officers

■ Finally, SERS argues that the OOR erred in specifically directing the disclosure of the first names of law enforcement officers requested by Requester. In support of this argument, SERS relies upon *Stein*, the unreported decision of this Court cited by the OOR, wherein we held that the first names of corrections officers are exempt from disclosure pursuant to the personal security exception.[12]

Thus, SERS asks that we reverse the OOR and hold that the first names of law enforcement officers are exempt from access by a requester under Section 708(b)(1)(ii) of the RTKL.

In *Stein*, slip op. at 1, the requester, an inmate at SCI–Smithfield, sought, *inter alia*, the names of all the employees at SCI–Smithfield. The Department of Corrections' (Department) open records officer supplied the information requested, but redacted the first names of the corrections officers pursuant to the personal security exception. *Id.*, slip op. at 1–2. The requester appealed to the OOR and, in support of its denial, the Department submitted a declaration of its chief of security. *Id.*, slip op. at 2. Therein, the chief of security "stated that the job of a corrections officer involves a risk of physical harm and that, because of the nature of their duties, corrections officers may become the targets of hostility from inmates." *Id.*, slip op. at 2–3. The chief of security stated further "that knowing the corrections officers' first name would facilitate retaliation by inmates against corrections officers and their families." *Id.*, slip op. at 3. The OOR upheld the Department's denial of the requester's request for the first names. *Id.*, slip op. at 3.

On appeal to this Court, we agreed that the corrections officers' first names were exempt from disclosure pursuant to the personal security exception. *Id.*, slip op. at 6. Our agreement was based on the evidence presented by the Department to support its denial of the requester's request pursuant to the personal security exception. We specifically relied on the chief of security's declaration detailing the risk of harm that occurred in the past when corrections officers' first names were

---

12. An unreported opinion of this Court issued after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa.Code § 69.414.

disclosed and the risk of harm that was likely to occur in the future to the corrections officers and their families if their first names were disclosed. *Id.,* slip op. at 7. We were also mindful that the requester was an inmate, that the setting of a prison involves unique security risks and concerns, and that the Department had a policy of restricting inmates from learning the corrections officers' first names that was intended to protect corrections officers. *Id.,* slip op. at 8.

Here, SERS did not offer any actual evidence that disclosure of the law enforcement officers' first names would be reasonably likely to result in a substantial and demonstrable risk of harm to the officers' personal security. Director Torta states in his sworn Affidavit that SERS withheld the names of the retired law enforcement officers based on the express exemption set forth in Section 708(b)(6)(i)(C); however, the exception set forth therein only expressly exempts a law enforcement officer's home address. Accordingly, the OOR did not err by directing the disclosure of the first names of the law enforcement officers that were requested by Requester.

## III. CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the OOR's Final Determination. In accordance with our opinion, SERS is not required to disclose: (1) the home addresses of individuals or beneficiaries residing at the same address as retired law enforcement officers or judges; or (2) the names and home addresses of the approximately 23 individuals whose requests to participate as a party with a direct interest were denied by the OOR. This matter is remanded for the OOR to determine whether these 23 individuals' names and home addresses should be exempt from disclosure pursuant to Section 708(b)(1)(ii) of the RTKL. The OOR's Final Determination is affirmed in all other respects.

## ORDER

**NOW,** January 9, 2015, the Final Determination of the Office of Open Records, entered in the above-captioned matter, is **AFFIRMED,** in part, and **REVERSED,** in part, and this matter is **REMANDED** for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.