# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ajani Posey,                        :
                Petitioner         :
                                       :
              v.                    :     No. 15 C.D. 2024
                                       :
Department of Corrections (Office of    :
Open Records),                        :
                Respondent     :     Submitted: November 7, 2024

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge[1]
                 HONORABLE MATTHEW S. WOLF, Judge

OPINION BY JUDGE WOLF                      FILED: January 13, 2025

Ajani Posey (Requester), *pro se*, petitions this Court for review of the December 19, 2023 Final Determination of the Office of Open Records (OOR) denying his appeal from the Department of Corrections' (Department) denial of a request for records pursuant to the Right-to-Know Law (RTKL).[2]  In his Petition for Review, Requester argues that the Department failed to meet its burden of proof under the RTKL and instead relied on inapposite case law in support of its denial. After review, we reverse the Final Determination and direct the Department to release the responsive records.  We do so because, as explained more fully below, the Department has neglected to support its arguments with a sufficient record and has argued incorrectly that there is a *per se* rule against disclosure based on prior unreported case law.

---

[1] The Court reached the decision in this case prior to the conclusion of Judge Ceisler's service on the Commonwealth Court.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

# I. Background

On October 18, 2023, Requester, an inmate at the State Correctional Institution at Houtzdale (SCI-Houtzdale), submitted a request to the Department seeking "the full (first and last) names of the following [employees] at [SCI-]Houtzdale for legal purposes[:] Lt. Diehl, [Correctional] Unit [M]anager Mr. Ginter, [p]syc[h]ologist . . . Bresnahan, Capt. Mooney, Officer Mr. Quick, and Officer Mr. Rooney." Certified Record (C.R.), Ex. 1, at 11.

After invoking a 30-day extension pursuant to Section 902(b) of the RTKL, 65 P.S. § 67.902(b), the Department issued a response on November 3, 2023, granting the request in part and denying it in part. *Id.* at 9-10. The Department provided the first names of the psychologist and the Correctional Unit Manager but asserted that those of the remaining four employees, all corrections officers, were exempt, citing four bases for the partial denial:

> • the RTKL's enumerated exception for information which, if disclosed, would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual, at Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii);
>
> • the exception for records maintained by an agency in connection with law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or a public protection activity, at Section 708(b)(2) of the RTKL, 65 P.S. § 67.708(b)(2);
>
> • the exception for personal identification information, at Section 708(b)(6) of the RTKL, 65 P.S. 67.708(b)(6);
>
> • the employees' constitutional right to privacy, pursuant to article I, section 1 of the Pennsylvania Constitution, PA. CONST. art. I, § 1.

*Id.* at 9-10. Requester appealed to OOR, arguing, *inter alia*, that the records were needed for litigation that he intended to pursue against the employees for various incidents of alleged misconduct against him. *Id.* at 3-4. Requester argued the denial of the request was a further deprivation of his civil rights. *Id.* at 4. Requester further contended that any security risks serious enough to warrant the withholding of some employee names would have been equally applicable to the two employees whose given names were released, rendering the Department's position contradictory. *Id.* at 3.

The Department submitted a letter brief to OOR arguing that it has "repeatedly and consistently" determined "the first and middle *names and initials* of [c]orrections [o]fficers" are exempt from public disclosure pursuant to Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii). C.R., Ex. 4 at 2-3 (emphasis in original). The Department cited this Court's unreported decision in *Stein v. Office of Open Records* (Pa. Cmwlth., No. 1236 C.D. 2009, filed May 19, 2010) (unreported),[3] where we affirmed an OOR final determination "that the first names of [c]orrections [o]fficers are exempt from public disclosure . . . because of the risk of harm that occurred in the past when corrections officers' first names were disclosed, and the risk of harm that was likely to occur in the future to the corrections officers and their families if their first names were disclosed." *Id.*, slip op. at 3. The Department also cited various OOR final determinations, including *Grant v. Department of Corrections* (OOR Dkt. AP 2021-1865), in which OOR upheld the Department's denial of requested access to the first initials of corrections officers. *Id.*, slip op. at 4. The Department noted that in *Grant*, OOR denied access based on the personal security exemption without any supporting evidence of personal

---

[3] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, unreported opinions of this Court may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

security concerns. *Id.* The Department's letter brief relied solely on the personal security exception; it did not argue any of the other three bases for nondisclosure cited in its initial denial. Moreover, the Department did not submit any affidavits, declarations, or other evidentiary documents in support of its position.

In its December 19, 2023 Final Determination, OOR denied the appeal in full and ruled that the Department was not required to take any further action. C.R., Ex. 6 at 6. While acknowledging that this Court's *Stein* decision was not binding precedent, OOR found it "persuasive" on the question before it. C.R., Ex. 6 at 4. OOR was unpersuaded by Requester's contention that the corrections officers' names could be released if the other two employee names were released, explaining that corrections officers "are potential targets of hostility from inmates because they are charged with enforcing discipline on the inmates." *Id.* at 5 (citing *Stein*, slip op. at 9-10). Additionally, OOR rejected the contention that Requester's intent to pursue litigation necessitated the requested records' release, since the "status of the individual requesting the record and the reason for the request, good or bad, are irrelevant as to whether a document must be made accessible." *Id.* at 3 n.1 (citing *Hunsicker v. Pa. State Police*, 93 A.3d 911, 913 (Pa. Cmwlth. 2014)). As to whether the Department carried its burden of invoking the personal security exception, the OOR cited this Court's observation in *Pennsylvania Game Commission v. Fennell*, 149 A.3d 101, 104 (Pa. Cmwlth. 2016), and *Office of the Governor v. Davis*, 122 A.3d 1185, 1194 (Pa. Cmwlth. 2015), for the proposition that an "affidavit may not be necessary when an exemption is clear from the face of a record." *Id.* at 3, 4.

Requester filed his Petition for Review in this Court on January 2, 2024,[4] seeking a reversal of the Final Determination.

## II. Issues

In his Brief to this Court,[5] Requester maintains that he "did not request any information that was not public" and that the denial of his request was legally erroneous. Requester's Br. at 2-3 (unpaginated). Requester argues that the Department's rationale for invoking the personal security exception is unpersuasive, since corrections officers are already subject to threats, harassment, and physical harm regardless of whether their first names are publicly revealed. If the dangers were as serious as the Department claims, Requester argues, then it would not have disclosed the first names of two of the six employees identified in the initial request. Requester also notes that he has repeatedly explained his purported need for the requested records (i.e., a lawsuit that he intends to file against prison officials), which is, in his view, "above and beyond what is required" of a requester under the RTKL. Because the Department's refusal to comply with the request hinders that litigation, Requester argues, that refusal constitutes not only a violation of the RTKL but of his fundamental right to due process. Requester further maintains that *Stein*, on which OOR relied in support of its conclusion, is "an unpublished opinion[;] therefor[e], it is not precedential." *Id.* at 3 (unpaginated). Finally, Requester does not address in his Brief the request for a penalty made in the Petition for Review, but briefly alleges that OOR "withheld records," thereby "acting in bad faith." *Id.*

---

[4] We exercise *de novo*, plenary review when considering RTKL appeals stemming from OOR determinations. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 477 (Pa. 2013).

[5] On November 5, 2024, Requester filed a "Memorandum in Support of Requester's Petition," setting forth the same arguments presented in his April 9, 2024 Brief to this Court.

In response, the Department points to this Court's observation in *Stein* that the first names of corrections officers were exempt under the RTKL because of "the risk of harm that occurred in the past when corrections officers' first names were disclosed and the risk of harm that was likely to occur in the future to the corrections officers and their families if their first names were disclosed." Department's Br. at 3 (citing *State Emps.' Ret. Sys. v. Fultz*, 107 A.3d 860, 872-73 (Pa. Cmwlth. 2015) (summarizing *Stein*)). The Department cites five previous OOR determinations denying similar appeals,[6] noting that, in at least two of those instances, OOR ruled in the Department's favor notwithstanding the absence of an affidavit or other evidence supporting its position.

## III. Discussion

Under the RTKL, records in a government agency's possession are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged. *Off. of the Dist. Att'y v. Bagwell*, 155 A.3d 1119, 1129 (Pa. Cmwlth. 2017). Because of this presumption, the agency has the burden of proving by a preponderance of the evidence that a record is exempt or privileged. *Am. Civ. Liberties Union v. Pa. State Police*, 232 A.3d 654, 658 (Pa. 2020) (citing Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1)). A preponderance of the evidence is such evidence as would lead a factfinder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *Bagwell*, 155 A.3d at 1130. The question of whether a record or

---

[6] *Nifas v. Pa. Dep't of Corr.*, OOR Dkt. AP 2012-0157; *Brandon v. Pa. Dep't of Corr.*, OOR Dkt. AP 2018-0190; *Grant v. Pa. Dep't of Corr.*, OOR Dkt. AP 2021-1865; *Gentilquore v. Pa. Dep't of Corr.*, OOR Dkt. AP 2022-0022; and *Prater v. Pa. Dep't of Corr.*, OOR Dkt. AP 2022-0523.

document is exempt from disclosure is, thus, a factual one. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 476 (Pa. 2013).

Section 708(b)(1)(ii) of the RTKL exempts from disclosure a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii). An agency invoking this exception must demonstrate a "reasonable likelihood" of a "substantial and demonstrable risk to a person's personal security." *Del. Cnty. v. Schaefer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012). This Court has defined substantial and demonstrable risk as risk that is "actual or real and apparent." *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019). Thus, in order to show a reasonable likelihood, an agency must offer more than speculation or conjecture. *Cal. Borough v. Rothey*, 185 A.3d 456, 468 (Pa. Cmwlth. 2018).

Below, OOR determined that the Department met its evidentiary burden notwithstanding the Department's failure to produce evidence to support its invocation of the personal security exception. We disagree.

In *Stein*, an inmate submitted a request for benefit and salary information for employees at SCI-Smithfield. The Open Records Officer granted much of the request, but redacted the first names of corrections officers. The inmate filed a second request specifically requesting the corrections' officers first names, which the Open Records Officer denied on the basis of the personal security exemption in Section 708(b)(1)(ii) of the RTKL. The inmate appealed to OOR, and the Department submitted the declaration of Major Timothy Riskus, Chief of Security for the Department, in support of its position. In his declaration, the Chief of Security detailed that the job of a corrections officer involves a risk of physical harm

7

and that inmates knowing corrections officers' first names would facilitate retaliation by inmates against corrections officers and their families. *Stein*, slip op. at 2-3. The OOR issued a final determination denying the inmate's request on the basis of Section 708(b)(1)(ii)'s personal security exception. On further appeal to this Court, we affirmed the OOR. We stated:

> Section 708(a)(1) states that "[t]he burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). In this case, in support of its argument that disclosure of the correction[s] officers' first names "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual," 65 P.S. § 67.708(b)(1)(ii), the Department submitted the Declaration.

*Id.* at 6-7. We further explained that through the Declaration, the Chief of Security explained that not only was disclosure of the corrections officers' first names likely to cause a risk of harm to corrections officers and their families, but such harm has occurred in the past as a result of disseminating the same requested information. *Id.* at 7. Accordingly, this Court accepted the Chief of Security's statement as sufficient evidence to carry the Department's burden of proving "substantial and demonstrable risk" to the corrections officers' personal security and affirmed the OOR's final determination denying the inmate access.

In this case, the OOR relied on *Stein* and several OOR decisions that were not appealed to this Court for the proposition that corrections officers' first names are *per se* exempt from disclosure under Section 708(b)(1)(ii)'s personal security exemption. However, a proper reading of *Stein* shows that access to those records was denied on the basis of the Chief of Security's Declaration, *i.e.*, specific evidence

proffered by the Department in support of the exemption. Cases from this Court discussing *Stein* show the import of the declaration evidence in that case. For example, in *Fultz*, 107 A.3d at 872-73, we reviewed OOR's grant of a request for, *inter alia*, the first names of law enforcement officers over an agency's invocation of the personal security exception. The agency appealed, relying on *Stein*. We explained that in *Stein*

> we agreed that the corrections officers' first names were exempt from disclosure pursuant to the personal security exception. [*Stein*], slip op. at 6. **Our agreement was based on the evidence presented by the Department** to support its denial of the requester's request pursuant to the personal security exception. We specifically relied on the [C]hief of [S]ecurity's [D]eclaration detailing the risk of harm that occurred in the past when corrections officers' first names were disclosed and the risk of harm that was likely to occur in the future to the corrections officers and their families if their first names were disclosed. *Id.*, slip op. at 7. We were also mindful that the requester was an inmate, that the setting of a prison involves unique security risks and concerns, and that the Department had a policy of restricting inmates from learning the corrections officers' first names that was intended to protect corrections officers. *Id.*, slip op. at 8.

(emphasis added). Having clarified *Stein*, we observed in *Fultz* that the agency there "did not offer any actual evidence that disclosure of the law enforcement officers' first names would be reasonably likely to result in a substantial and demonstrable risk of harm to the officers' personal security." *Id.* at 873. Given that lack of evidence, we held that "the OOR did not err by directing the disclosure." *Id.*

Turning to the matter *sub judice*, OOR erred by overreading *Stein* to hold the personal security exception shields corrections officers' first names as a matter of law. OOR compounded this error by citing *Fennell* for the proposition that an

affidavit may not be needed when "an exemption is clear from the face of a record." 149 A.3d at 104. *Fennell*, however, is also inapposite.

In *Fennell*, a requester sought a report drafted by the Pennsylvania Game Commission (Game Commission) following its investigation into a complaint that a hunting tree stand belonging to the requester's husband stood too close to a neighbor's house.[7] *Id.* at 102. The Game Commission denied the request on the bases of Section 708(b)(17)(i)'s exception for "[c]omplaints submitted to an agency" and Section 708(b)(17)(ii)'s exception for "[i]nvestigative materials, notes, correspondence and reports," 65 P.S. § 67.708(b)(17)(i)-(ii). *Id.* On appeal to OOR, the Game Commission did not submit an affidavit or other factual support, but only an "unsworn position statement" reiterating its reasons for the denial.[8] *Id.* at 103. OOR granted the requester's appeal on the basis that the Game Commission "submitted no evidence on appeal," and therefore "could not sustain its burden of proving the requested records were exempt from disclosure." *Id.* We reversed, explaining that Section 1303(b) requires a RTKL appeals officer to consider "'the information filed concerning the request,' but is not required to take evidence." *Id.* at 104 (citing 65 P.S. § 67.1303(b)). Thus, we reasoned, "the legislature must have intended that the issue could be decided without the submission of evidence where appropriate, such as where the facts are undisputed by the parties." *Id.* at 104. Since

---

[7] In her standard RTKL request form, the requester stated, in relevant part: "Two weeks before the 2014 deer hunting season began I was contacted by the game commission in regards to my . . . tree stand . . . . Mr. Foster called in the complaint . . . . I would like to have a copy of the report or anything that may have been put on record of the incident." 149 A.3d at 102.

[8] The requester did not submit information or legal arguments in support of her position, and her appeal to OOR was focused on the question of whether she and her husband should have been allowed to keep the complained-of tree stand. 149 A.3d at 102-03.

there was no dispute between the parties that the requester sought investigative materials and a copy of a complaint made to an agency, we concluded that the exceptions were properly invoked. *Id.*

*Fennell* is distinguishable from the instant matter.[9] The records sought in *Fennell* were, by the requester's own identification, of the kinds exempt from release under the agency complaint and noncriminal investigations exceptions. In this case, by contrast, where the request did not identify exempt records on its face, factual evidence is necessary to establish the connection between the requested records and the asserted exemption. In the case of the personal security exemption, an agency must offer more than speculation or conjecture. *Rothey*, 185 A.3d at 468. A letter brief or other such unsworn statement by counsel is inadequate as a matter of law to satisfy the Department's burden. *See Davis*, 122 A.3d at 1193 (observing that an agency's "unsworn position statement does not constitute evidence" but is "akin to briefs or proposed findings of fact, which, while part of the record, are distinguishable from the *evidentiary* record") (emphasis in original). Under these circumstances, where the agency "did not offer any actual evidence that disclosure of the [requested] first names would be reasonably likely to result in a substantial and demonstrable risk of harm to the officers' personal security," disclosure is

---

[9] As noted, OOR also cited our opinion in *Davis* in support of its conclusion that the Department could meet its burden of proof without an affidavit or any other evidence. A more careful reading of our opinion in that case further militates against a ruling in favor of the Department, however. In *Davis*, while discussing "the utility of affidavits as evidence upon which an appeals officer may base a decision," we made the following observation: "Indeed this Court [has] cited lack of a sufficiently detailed affidavit as the grounds for rejecting asserted exemptions. However, this Court has not held an affidavit or other verified statement is *required* to prove an exemption. Rather, we hold *evidence* is required, and in the RTKL context, an affidavit may serve that function." 122 A.3d at 1194 (emphasis in original) (cleaned up).

11

required.  *Fultz*, 107 A.3d at 873.   Given that lack of evidence, we held that "the OOR did not err by directing the disclosure."  *Id.* at 873.

For the above reasons, we hold that OOR erred in relying on *Stein* and outcomes from previous OOR final determinations to hold the requested records exempt under the personal security exception without any evidence submitted by the Department. To be clear, in *Stein*, the Department offered a record, with evidence of its policies and a declaration of its Chief of Security for the Department to support nondisclosure.  In the case at bar, the Department offers nothing but argument, i.e., no evidence, and that legal argument which it does offer misreads that there has been a general judicial rule by precedent carving out an exception to the RTKL.  The record on this petition dictates this outcome.

In sum, permitting such perfunctory rejections of requests effectively imposes a *per se* rule against the release of certain categories of records with a basis only in OOR precedent, rather than the RTKL itself.  Furthermore, such blanket denials are incongruent with the well-settled principle that "the exceptions to disclosure of public records must be narrowly construed" pursuant to "the RTKL's goal of promoting government transparency and its remedial nature."  *In re Melamed*, 287 A.3d 491, 498 (Pa. Cmwlth. 2022) (citing *Davis*, 122 A.3d at 1191).[10]

---

[10] In his Petition for Review, Requester sought a civil penalty in the amount of $600.00 against the Department pursuant to Section 1305(a) of the RTKL, 65 P.S. § 67.1305(a), "due to the parties using omission and trickery [and] acting in bad faith."  Petition for Review, Relief Sought. Requester does not advance any argument for penalties under Section 1305(a) in his brief to this Court, and thus, the argument is waived. *In re Condemnation of Land for S.E. Ctr. Business Dist. Redevelopment Area*, 946 A.2d 1154, 1156 (Pa. Cmwlth. 2008) ("Arguments not properly developed in a brief will be deemed waived.").  Even if the argument is not waived, a requester must present evidence of bad faith to justify the imposition of costs or penalties. *Drack v. Tanner*, 172 A.3d 114, 121 (Pa. Cmwlth. 2017).  Here, Requester failed to support his penalties request beyond a bald allegation in the Petition of Review of "omission and trickery."  Thus, if the request for penalties had been properly preserved, we would deny it.

## IV. Conclusion

While we are cognizant of the Department's concern for the personal security of its employees, we must also recognize that the RTKL clearly imposes on the Department the duty to release records upon request or, alternatively, to prove that the records in question are "exempt from public access . . . by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). Since the Department failed to produce *any* evidence in this case in spite of the factual question before OOR, we conclude that OOR erred in finding that the Department met its burden of proof. Accordingly, we reverse the Final Determination and direct the Department to release records responsive.

_____
MATTHEW S. WOLF, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ajani Posey,                                    :
                          Petitioner            :
                                                :
          v.                                    :     No. 15 C.D. 2024
                                                :
Department of Corrections (Office of            :
Open Records),                                  :
                          Respondent            :

# **O R D E R**

AND NOW, this 13th day of January 2025, it is hereby ORDERED as follows:

1.    The Final Determination of the Office of Open Records in the above-captioned matter, dated December 19, 2023, is hereby REVERSED.

2.    The Department of Corrections (Department) is ORDERED to disclose to Ajani Posey (Requester) the records identified by Requester in his October 18, 2023 request for records pursuant to Section 703 of the Right-to-Know Law (RTKL), Act of February 14, 2008, P.L. 6, 65 P.S. § 67.703.  The Department shall disclose said records to Requester within 20 days of the date of this Order.  Failure to comply with this Order may subject the Department to penalties of up to $500.00 per day pursuant to Section 1305(b) of the RTKL, 65 P.S. § 67.1305(b), as deemed appropriate by this Court.

Jurisdiction relinquished.

_____
MATTHEW S. WOLF, Judge