STATE EMPLOYEES' RETIREMENT
SYSTEM, Petitioner

v.

PENNSYLVANIANS FOR UNION
REFORM, Respondent.

Pennsylvanians for Union
Reform, Petitioner

v.

State Employees' Retirement
System, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2014.
Decided March 20, 2015.

Craig J. Staudenmaier, Harrisburg, for designated petitioner Pennsylvanians for Union Reform.

M. Catherine Nolan, Harrisburg, for designated respondent State Employees' Retirement System.

Richard E. Burridge and Joseph F. Canamucio, Harrisburg, for intervenor Pennsylvania State Education Association.

Lorie K. Dakessian, Philadelphia, for intervenor Pennsylvania Turnpike Commission.

BEFORE: RENÉE COHN JUBELIRER, Judge, P. KEVIN BROBSON, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge P. KEVIN BROBSON.

In this appeal from a final determination of the Pennsylvania Office of Open Records (OOR) under the Right–to–Know Law [1] (RTKL), we consider the merits of a request for names and home/mailing addresses in the possession of a Commonwealth entity, in this case the State Employees' Retirement System (SERS).[2]

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

2. Essentially, the RTKL request at issue here is for a list of names and home addresses. It is not a request for a particular document(s) in the possession of an agency that happens to contain name and home address information—e.g., a building permit, professional license, land development plan, etc.—and that documents a particular transaction or activity of an agency. This Court has held that not all information in an agency's possession meets the definition of "record" in Section 102 of the RTKL. *See Easton Area Sch. Dist. v. Baxter*, 35 A.3d 1259, 1262–64 (Pa.Cmwlth.) (holding personal emails on agency-owned computer not record under RTKL), *appeal denied*, 617 Pa. 641, 54 A.3d 350 (2012). Because the issue is not raised by any party, for purposes of this appeal we assume that the list PFUR seeks in this matter is a "record" as defined under Section 102 of the RTKL, 65 P.S. § 67.102.

Both SERS and the requester, Pennsylvanians for Union Reform (PFUR), have appealed OOR's final determination. *See* Section 1301(a) of the RTKL, 65 P.S. § 67.1301(a) (granting right of appeal under RTKL to requester or agency). We consolidated the appeals and designated PFUR as the petitioner. The Pennsylvania Game Commission (Game Commission), the Pennsylvania Turnpike Commission (Turnpike Commission), and the Pennsylvania State Education Association (PSEA) are participating as intervenors in these consolidated appeals.[3] For the reasons set forth below, we affirm in part, reverse in part, and remand to OOR for further proceedings.

## I. BACKGROUND

In a request dated August 23, 2013, PFUR sought the following from SERS: "The names and associated home/mailing addresses of all active members, retired members (annuitants), and inactive vested members of SERS." (Reproduced Record (R.R.) 1a.) By letter dated August 30, 2013, SERS acknowledged receipt of PFUR's request and notified PFUR that it was extending the response period by an additional thirty days pursuant to Section 902(b) of the RTKL, 65 P.S. § 67.902(b). By letter dated August 30, 2013, PFUR informed SERS that it was narrowing its request to exclude information relating to employees of OOR, judges of the Commonwealth Court, and justices of the Pennsylvania Supreme Court. (*Id.* 5a.) In that same letter, PFUR expressed concern

about and disagreement with the possibility that SERS, either on its own or as a result of a directive issued by OOR, might attempt to notify individual SERS members of PFUR's request and invite objections by these "third parties." (*Id.*)

In a letter dated September 30, 2013, SERS responded to PFUR's request, granting it in part and denying it in part. (R.R. 8a–10a.) SERS provided PFUR with the names and home addresses of 34,524 SERS members. SERS, however, refused to provide access to the home addresses of law enforcement officers and judges, citing the express exemption from access to this information set forth in Section 708(b)(6)(i)(C) of the RTKL, 65 P.S. § 67.708(b)(6)(i)(C). SERS also refused to provide the home addresses of SERS members who reside in the same household as law enforcement officers and judges, reasoning that the same exemption applies. SERS denied access to records of members seventeen years of age or younger, citing the exemption from access set forth in Section 708(b)(30) of the RTKL, 65 P.S. § 67.708(b)(30) ("A record identifying the name, home address or date of birth of a child 17 years of age or younger."). SERS also denied access to information relating to retired members of SERS who have attained superannuation age,[4] citing the RTKL's exemption from access under Section 708(b)(1)(ii), 65 P.S. § 67.708(b)(1)(ii), often referred to as the personal security exemption.[5] Citing that same exemption, SERS denied access to

---

3. The Office of General Counsel has filed a brief as *amicus curiae* in support of SERS' position in these consolidated appeals.

4. Depending on the employee's class of service, "superannuation age" relates to either a minimum number of years of credited service or an age threshold (*e.g.*, 50, 55, or 60, depending on class of service). 71 Pa.C.S. § 5102.

5. This provision exempts from disclosure "[a] record, the disclosure of which … would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." Section 708(b)(1)(ii) of the RTKL.

records relating to "approximately" 363 members who, either individually or through their employing agency, notified SERS of specific threats to their personal safety and security.

Again citing the personal security exemption, SERS denied access to the records of another 78,784 active SERS members employed by agencies under the jurisdiction of the Governor's Office of Administration, 3,804 active members employed by "quasi-independent agencies," and "approximately" 3,561 inactive, vested members of SERS. SERS claimed that it was unable to determine whether any members within these three groups had any particular security concerns and, therefore, invoked the exemption out of an abundance of caution. SERS reasoned:

> As you know, a blanket application of the personal security exception is not valid and will not withstand judicial scrutiny. However, providing home addresses of all employees in those classes of members, excepting no one based on the personal security exception, "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of" some of those individuals.

(*Id.* 10a.) SERS, however, promised to continue its review of those records, anticipating that it may be able to grant in part and deny in part that portion of the request by the end of the year or sooner. (*Id.*)

PFUR appealed the partial denial to OOR. Of the denials set forth in SERS' response letter, PFUR challenged the following:

(1) records of all law enforcement officers and family members within the same household;

(2) records of all judges (other than judges and justices of the Commonwealth Court and Pennsylvania Supreme Court, respectively) and family members within the same household; and

(3) records of SERS members seventeen years of age or younger.

PFUR contended that because it did not seek any information that would identify any of these individuals as law enforcement, judges and justices, or minors, SERS cannot claim that the records, on their face, are exempt. (*Id.* 14a.)

PFUR also challenged SERS' use of the personal security exemption to support denial of the records of SERS members who have attained superannuation age. It also challenged SERS' invocation of the same exemption with respect to the 78,784 active SERS members employed by agencies under the jurisdiction of the Governor's Office of Administration, 3,804 active members employed by "quasi-independent agencies," and "approximately" 3,561 inactive, vested members of SERS. In the absence of specific evidence of an individual concern for personal security, PFUR contended that SERS improperly invoked the personal security exemption for these three classes of SERS members. (*Id.* 14a–15a.)

In addition to these specific objections, PFUR raised several additional points in its appeal to OOR. It offered SERS additional time to respond to PFUR's request and, concomitantly, offered to grant an extension to OOR until December 31, 2013, to issue its final determination on PFUR's appeal.[6] PFUR also noted that SERS'

---

6. Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1), provides that the OOR appeals officer must make a final decision on a

RTKL appeal within thirty days of the receipt of the appeal, "[u]nless the requester agrees otherwise."

response did not specifically mention members of SERS in the legislative branch. PFUR contended that the names and addresses of those members should be released. Responding to a request made by a union to PFUR through PFUR's web site, PFUR refused to exempt from its request members of unions as a class. Finally, PFUR offered to exempt from its request any individual who makes a request directly to PFUR, through a web link, to be exempted. (*Id.* 15a.)

On October 2, 2013, OOR acknowledged receipt of PFUR's appeal. OOR gave PFUR and SERS seven days to submit information and legal argument in support of their respective positions. In addition, OOR advised SERS:

> ***Agency Must Notify Third Parties:*** If records concern or pertain to an employee of the agency; constitute confidential or proprietary or trademarked records of a person or business entity; *or* are held by a contractor or vendor, **the agency must notify such parties of this appeal immediately and provide proof of that notice to the OOR within 7 business days.**
>
> Such notice must be made by 1) providing a copy of all documents included with this letter; and 2) advising **that interested persons may request to participate in this appeal** (*see* 65 P.S. § 67.1101(c)).

(*Id.* 33a (emphasis in original).) [7]

Thereafter, the parties and OOR engaged in several communications relating to procedural matters, mostly surrounding efforts to notify third parties of the PFUR appeal and an opportunity to participate. On October 7, 2013, OOR informed the parties that it had established an email address that SERS members could use to submit information to OOR regarding PFUR's appeal. OOR refused to give SERS additional time to notify its members of the appeal, absent good cause. OOR offered to provide SERS with a link to its request to participate form, which SERS could send to its members. OOR, however, did not require SERS to use the form. OOR gave SERS until October 11, 2013, to submit its evidence and legal argument, at which point the record would be closed and only reopened for good cause. OOR, however, also indicated that it would consider further extending the deadline in the future. (*Id.* 42a.) OOR, over PFUR's objection, later granted SERS additional time until December 6, 2013, to provide notice to its members and agreed to keep the record open an additional ten business days. (*Id.* 46a.)

OOR granted requests to participate submitted by thirty Commonwealth agencies, four public employee labor unions, and 3,851 individual SERS members who objected to the release of their information to PFUR. OOR referred to these individuals and entities as "Direct Interest Participants." After additional sparring between SERS and OOR over procedure and the

---

7. Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c), provides:

(c) Direct interest.—

(1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

(2) The appeals officer may grant a request under paragraph (1) if:

(i) no hearing has been held;

(ii) the appeals officer has not yet issued its order; and

(iii) the appeals officer believes the information will be probative.

(3) Copies of the written request shall be sent to the agency and the requester.

submission of additional information, evidence, and legal arguments by SERS, PFUR, and others permitted by OOR to participate, PFUR, in a reply to the third-party submissions, notified OOR on January 9, 2014, that it was withdrawing its appeal in part. According to PFUR, as a result of this partial withdrawal, it sought names and home/mailing addresses for only the following: (1) all individual members of SERS who notified OOR, directly or indirectly, that they objected to the disclosure of their information ("Individual Objectors"); (2) all SERS members who have an out-of-state or foreign country home/mailing address; (3) all members of the Pennsylvania House of Representatives and Pennsylvania Senate; (4) individual members of SERS who, in the course of the proceeding before OOR, were identified as members of the State College and University Professional Association (SCUPA) and the Correctional Institutional Vocational Education Association (CIVEA), both of which are local association members of PSEA; (5) Governor Tom Corbett; (6) Lieutenant Governor Jim Cawley; and (7) Pennsylvania Treasurer Rob McCord. (*Id.* 272a.)

OOR issued its final determination on the PFUR appeal on January 31, 2014.[8] (*Id.* 307a–31a.) With respect to the merits of PFUR's appeal, OOR granted the appeal in part and denied the appeal in part. OOR first rejected the argument, raised by several of the Direct Interest Participants, that there is a constitutional right to privacy in one's home address. OOR next rejected SERS' argument that its fiduciary duty to its members prevented SERS from releasing their names and home/mailing addresses. OOR also held that SERS failed to meet its burden of proving that

the records of SERS members who had reached superannuation age are exempt from disclosure under the RTKL personal security exemption. In a footnote, OOR also rejected SERS' evidence as insufficient to support an exemption for the home addresses of SERS members who are law enforcement officers or judges. OOR explained:

> While SERS submitted an affidavit attesting that it is able to identify which SERS members are law enforcement officers and judges, SERS's affidavit failed to identify which SERS members fell into these categories. Therefore, SERS has failed to meet its burden of proof that these exemptions shield the requested records from disclosure.

(*Id.* 323a.) OOR also concluded that there was no evidence to support exemption of the home/mailing addresses for the Governor, Lieutenant Governor, Treasurer, Senators, Representatives, and SERS members with out-of-state or foreign country home/mailing addresses.

OOR rejected PSEA's contention that the RTKL violated the due process rights of CIVEA and SCUPA members, because it does not provide those members with notice and an opportunity to challenge release of their personal information before an agency or a court. Although OOR sustained PFUR's appeal with respect to SCUPA members, it analyzed the issue of whether members of CIVEA should be entitled to protection of their information under the personal security exemption (Section 708(b)(1) of the RTKL) or the exemption from release of home addresses of law enforcement officers (Section 708(b)(6)(i)(C) of the RTKL). The Department of Corrections (Corrections) submitted affidavits to support its contention that

---

8. PFUR again agreed to give OOR an extension of time to issue its final decision under

Section 1101(b)(1) of the RTKL.

employees of Corrections, identified members of CIVEA, are entitled to the protections of the personal security exemption. OOR agreed:

> Individuals employed by [Corrections], including the identified members of CIVEA, are responsible for the care, custody and control of over 50,000 inmates. While many of these inmates are non-violent offenders, who may harbor no animosity to [Corrections'] employees and merely want to pay their debt to society, [Corrections'] evidence makes clear that many inmates are violent individuals who would harm not only Corrections Officers or their families, but also non-uniformed [Corrections'] employees, such as those who provide educational services to inmates. Based on the evidence provided and the record before ... OOR, [Corrections] has met its burden of proof that the home/mailing addresses of the identified members of CIVEA are exempt from disclosure.

(*Id.* 326–27a.)

Finally, OOR considered PFUR's request for the names and home/mailing addresses of the Individual Objectors, which number 3,851. Rather than address the merits of each of the individual objections, OOR held that PFUR waived any appeal with respect to the Individual Objectors. OOR reasoned that, from the outset of its appeal, PFUR represented that it would withdraw its appeal with respect to any SERS member who objected to the release of the member's home/mailing address. OOR cited several instances in the record where, OOR contended, PFUR made such a concession.

## II. ISSUES ON APPEAL[9]

█ In its appeal, PFUR challenges OOR's determination that PFUR waived its request for the Individual Objectors' home addresses. It challenges the procedures OOR implemented to allow individuals and entities to participate in PFUR's appeal under Section 1101(c) of the RTKL. PFUR specifically complains that OOR violated both the RTKL and PFUR's due process rights by allowing third parties to file objections to PFUR's appeal up to the date OOR issued its final determination in this matter, thereby denying PFUR an opportunity to respond to those objections. PFUR also contends that OOR accepted the Individual Objectors' filings on an unverified form that lacked any evidentiary support. Because OOR did not give PFUR an opportunity to challenge the Individual Objectors' claims, OOR's reliance on these unverified filings is reversible error. PFUR's third and final issue on appeal is whether OOR erred in applying a blanket personal security exemption to the home/mailing addresses of all members of CIVEA based on the evidence of record.

In its appeal, SERS contends that OOR erred in rejecting its contention that members of SERS who have reached superannuation age are a vulnerable population, and, therefore, their home/mailing addresses should be exempt from disclosure under the personal security exemption of the RTKL. SERS also challenges OOR's ruling with respect to applicability of the exemption for the home/mailing addresses of law enforcement officers and judges.

Intervenors PSEA and Turnpike Commission press the argument that Pennsylvania citizens have a constitutional right to privacy in their home addresses that must be considered before mandating disclosure

---

9. Our standard of review of determinations made by appeals officers under the RTKL is *de novo,* and our scope of review is broad or plenary. *Bowling v. Office of Open Records,* 621 Pa. 133, 75 A.3d 453, 477 (2013).

under the RTKL. They also raise concerns about the due process rights of individuals whose personal information may be the subject of a request under the RTKL. PSEA also contends that OOR erred when it failed to honor PSEA's request, on behalf of all of its members, to withhold the release of PSEA members' home addresses.

Intervenor Game Commission contends that OOR failed to address two of its arguments. First, Game Commission argues that one of its regulations, 58 Pa.Code § 131.9, exempts the release of the names and home addresses of Game Commission employees. Second, Game Commission argues that all of its employees' home addresses should be protected under the RTKL personal security exemption.[10]

### III. DISCUSSION

#### A. PFUR Appeal

##### 1. The Individual Objectors

SERS provided notice of PFUR's appeal to OOR to approximately 188,000 of its members. Nearly 4,000 of those SERS members, active and retired, filed a form with OOR, objecting to the disclosure of their home/mailing address information. For the most part, it appears that these Individual Objectors used a form created and made available by SERS (SERS Form). The form is titled "Request to Participate as a Direct Interest Participant" and specifically references PFUR's appeal before OOR. The form provides: "Please accept this as a request to participate as a third party with a direct interest in a currently pending appeal before

[OOR] pursuant to 65 P.S. § 67.1101(c)." (R.R. 220a.)

The SERS Form includes five pre-printed bases to support SERS' denial of access to the filer's home/mailing address: (1) the member or a household family member is or was a member of law enforcement; (2) the member or a household family member is or was a judge; (3) the member is seventeen years of age or younger; (4) the member has reached superannuation age; and (5) the member has a personal security concern. In addition to selecting which of the preprinted grounds the member wishes to invoke, the SERS Form provides space for the member to describe how the member believes his or her participation would assist OOR in rendering its final determination. It also invites the member to attach additional information to the form. The form does not contain language to the effect that the statements in the form are made under penalty of perjury— i.e., the SERS Form is not verified.

We first address whether OOR erred in concluding that PFUR waived or, more accurately stated, withdrew its request for disclosure of the names and home/mailing addresses of the Individual Objectors. Waiver, under the law, is the voluntary relinquishment of a known right or claim. *Commonwealth ex rel. Corbett v. Griffin*, 596 Pa. 549, 946 A.2d 668, 679 (2008). Waiver requires a "clear, unequivocal[,] and decisive act" by the party asserting the right, evidencing the party's intent to surrender it. *Id.* In reviewing OOR's stated bases for its conclusion and the record, we agree with PFUR that

---

10. Game Commission also asserts that SERS should not be required to respond to PFUR's request, because it would require SERS to create a new record. *See* Section 705 of the RTKL, 65 P.S. § 67.705 (providing that when responding to RTKL request, agency is not required to create record that does not exist).

In doing so, Game Commission raises a statutory protection that belongs to the agency responding to a RTKL request. Because SERS did not raise this issue before OOR and does not raise it on appeal to this Court, we will not address it.

OOR erred in concluding that PFUR withdrew its request for the Individual Objectors' information.[11]

■ As noted above, PFUR modified its RTKL request on a couple of occasions. The last such filing with OOR was on January 9, 2014. In that filing, PFUR clearly indicated that it was still seeking the names and home/mailing address information for the Individual Objectors. In finding waiver/withdrawal, OOR found that PFUR had made repeated and unequivocal statements that it would withdraw its appeal as to any SERS members who objected to the release of their information. PFUR is correct, however, that it never made this representation. At most, PFUR made an offer to all SERS members to withdraw its request for their information *if* the SERS member registered at a PFUR-created web site. There is no evidence in the record that all of the Individual Objectors accepted PFUR's offer. Accordingly, OOR erred in finding waiver. We remand this matter to OOR to consider whether the information submitted by the Individual Objectors supports denial of PFUR's request for any or all of the names and home/mailing addresses of the Individual Objectors and to issue a final determination with respect thereto.

### 2. Procedural Challenges to Third Party Participation

We next address three procedural challenges to OOR's handling of third-party participation requests.

■ PFUR first complains that OOR erred by allowing individuals and entities to file objections under Section 1101(c) of the RTKL up until the date OOR issued its final determination. Section 1101(c)(1) of the RTKL provides that a written request to participate "may" be filed "within 15 days following receipt of actual knowledge of the appeal." PFUR argues that this means that if a third party fails to file the written request within this period of time, the third party is barred from submitting information to OOR under Section 1101(c). This section of the RTKL also provides that a request to participate should be filed "no later than the date the appeals officer issues an order." Section 1101(c)(1) of the RTKL. It also provides the OOR appeals officer the authority to grant a request to participate if, *inter alia,* a final decision has not yet been issued and "the appeals officer believes the information will be probative." Section 1101(c)(2) of the RTKL. We also find relevant Section 1102(b)(3) of the RTKL, 65 P.S. § 67.1102(b)(3), which empowers the OOR appeals officer to "rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute." *See Bowling v. Office of Open Records*, 621 Pa. 133, 75 A.3d 453, 474 (2013) ("All appeals officers are directed by the RTKL to make their decisions in an expedited fashion, and they are given considerable discretion to achieve this goal.").

■ In light of these provisions, the 15–day period in Section 1101(c)(1) of the RTKL, on which PFUR relies, is more directory than mandatory. *See Womack v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 83 A.3d 1139, 1144 (Pa.Cmwlth.) (observing that time period in statute is mandatory where "essential to the statutory purpose or where the statute itself indicates that performance within the time period is mandatory"), *appeal denied*, —

---

11. Other than restating OOR's waiver analysis, SERS does not attempt in its brief to defend OOR's waiver decision. Indeed, SERS notes that when OOR asked the parties for their position on the possibility of waiver, SERS agreed with PFUR that PFUR had not waived its request for the information about the Individual Objectors. (SERS Br. at 41.)

Pa. ——, 94 A.3d 1011 (2014). As our Supreme Court recognized in *Bowling*, the statutory procedures in the RTKL are "designed to dispose of most disputes in an efficient and timely fashion." *Bowling*, 75 A.3d at 474. For purposes of disposition of a requester's appeal to OOR, the critical and thus mandatory time period is the period within which the OOR appeals officer must render a final determination. Section 1101(b)(1) of the RTKL requires an appeals officer to issue the final determination within thirty days of receipt of the appeal, "[u]nless the requester agrees otherwise." Section 1101(b)(2) of the RTKL provides that failure of the appeals officer to issue a timely final determination is treated as a deemed denial. The fact that the General Assembly chose to include the deemed denial language in the statute bolsters our conclusion that the statutory deadline imposed on OOR to issue a final determination is essential to the statutory purpose of the RTKL.

PFUR sought the names and home/mailing address of nearly 200,000 people, some of whom may have adequate factual and legal bases to claim that their personal information should not be made public. In our view, OOR took reasonable steps to ensure that these individuals had notice and an opportunity to object to the disclosure of their personal information to PFUR. In so doing, the OOR appeals officer acted within his statutory discretion. We see nothing in the record to indicate that OOR's handling of the third-party participation requests past the 15–day time period delayed resolution of PFUR's appeal. PFUR gave OOR until January 31, 2014, to issue its final determination, and OOR issued its final determination on that date.

▆▆▆ PFUR next argues that its due process rights were violated because OOR did not afford PFUR an opportunity to challenge the submissions of the third parties. We reject this contention as well. This Court has held that neither the RTKL nor the courts have extended rights to discovery or to due process to a requesting party under the RTKL. *Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 519 (Pa.Cmwlth.), *appeal denied*, 612 Pa. 710, 31 A.3d 292 (2011). A requester has no right to a hearing before OOR and no right to examine or cross-examine those who may oppose access to the requested records. *Id.* "[D]ue process does not require a hearing because the right to information provided by the RTKL does not involve a property right because access to public records is a 'privilege' granted by the General Assembly." *Prison Legal News v. Office of Open Records*, 992 A.2d 942, 947 (Pa.Cmwlth.2010).

▆▆▆ Even if the RTKL did vest in a requester a right worthy of constitutional due process, due process is a flexible concept, requiring only as much, or as little, as the situation warrants. *See, e.g., Burger v. Bd. of Sch. Dirs. of McGuffey Sch. Dist.*, 576 Pa. 574, 839 A.2d 1055, 1062 (2003). As our Supreme Court acknowledged in *Bowling*, the expedited procedures established by the General Assembly in the RTKL for review of appeals before an OOR appeals officer are less formal and less robust than those that typically govern the administrative agency adjudicatory process. *See Bowling*, 75 A.3d at 473. "[T]he essential elements of due process in an administrative proceeding are notice and an opportunity to be heard." *McFadden v. Unemployment Comp. Bd. of Review*, 806 A.2d 955, 958 (Pa.Cmwlth.2002). There can be no doubt that the RTKL, even under its expedited framework, provides notice and an opportunity to be heard to a requester. As for the ability to challenge written submissions from the agency or third parties

under Section 1101(c) of the RTKL, we have held:

> [E]ven assuming, *arguendo* that the RTKL does create a right that rises to the level of a property right in the requested information, due process would not require a full-blown hearing. The private interest affected—access to government documents—is relatively minor; the government's interest in reducing the fiscal and administrative burdens of responding to RTKL requests so that it can concentrate its resources on its regular duties is high; and the likelihood that a full-blown hearing would lessen erroneous deprivations of the right compared to reliance on written submissions is low.

*Prison Legal News,* 992 A.2d at 947. Accordingly, OOR did not violate PFUR's procedural rights, either under the RTKL or as a matter of due process, in accepting the third-party submissions without providing PFUR an opportunity to respond.

PFUR's third and final procedural challenge relates to the SERS Form. PFUR complains that the form has no evidentiary value, because the form does not provide any indicia that the statements contained therein are made under penalty of perjury. PFUR thus challenges the evidentiary weight that OOR could afford these forms in evaluating the applicability of exemptions under the RTKL. As noted above, however, OOR did not consider the merits of these submissions, choosing instead to find that PFUR waived its request for the Individual Objectors' information. Because we are reversing and remanding that portion of OOR's final determination, we will not rule on this particular procedural challenge. On remand, OOR should consider PFUR's objection to OOR's reli-

ance on any unsworn submissions of the Individual Objectors.[12]

### 3. CIVEA—Personal Security Exemption

 PFUR contends that the record before OOR is not sufficient to support application of the personal security exemption under the RTKL to all members of CIVEA. This record appears to consist of a submission, with accompanying affidavits, by Corrections. (R.R. 332a–436a.) In that submission, Corrections contended that all of its employees' names and home/mailing addresses should be exempt under the RTKL on multiple grounds.

 An agency invoking the personal security exemption must establish on the record a reasonable likelihood of a substantial and demonstrable risk to individual security if the requested information is disclosed under the RTKL. *Carey v. Pa. Dep't of Corr.,* 61 A.3d 367, 373 (Pa. Cmwlth.2013). "Personal security issues are of particular concern in a prison setting. Given the heightened risk associated with prisons, representations regarding perceived threats to individual [Corrections] personnel posed by inmates are persuasive." *Id.* at 374. PFUR concedes in its brief that "there are positions within . . . Corrections that would warrant consideration of personal security threats." (PFUR Principal Br. at 50.) It contends, however, that the affidavits submitted by Corrections are insufficient to establish that the positions held by CIVEA members within Corrections fall within this sensitive class of Corrections employees.

Corrections submitted several affidavits, many authored by Major Victor Mirarchi, Corrections' Chief of Security. In one

---

12. In *Sherry,* this Court held that testimonial *affidavits* could constitute sufficient evidence to support the applicability of a RTKL exemp-

tion to a requested record. *Sherry,* 20 A.3d at 520.

particular affidavit, Major Mirarchi speaks to the safety of Corrections employees who work within the agency's prison facilities:

7. In [Corrections] we house more than 50,000 inmates and employ over 15,000 employees.

8. The inmates are committed to the care, custody, and control of [Corrections].

9. The inmates that are housed by ... [Corrections] have been convicted of a variety of offenses, some of which are the most violent and heinous.

10. Most of [Corrections'] employees are employed within a Correctional Institution or have regular occasion to work in the correctional facilities and interact with inmates.

. . .

14. Agency employees are responsible to file misconducts against inmates when the inmates violate prison policies and rules.

15. [Corrections] employees are subject to retaliation and harassment from inmates because they are responsible for many decisions for which an inmate may harbor animosity towards them, such as the promulgation of [Corrections] policy and decisions pertaining to housing, programming, classification, employment, medical, mental health treatment, educational, etc., all of which have direct impact upon inmates' day to day life.

16. This retaliation takes the form of threats, harassment, assaults, or physical harm, or the filing of fraudulent liens or other financially damaging documents.

17. After reviewing misconduct statistics from 2009-to the present, I have found that there were approximately 314 misconducts filed by non-Corrections Officers [ (non-CO) ] against inmates for threats made by inmates toward the employees and their families and assaults on non-CO staff. . . .

18. I have personal knowledge of instances of real harm done to employees' physical person or finances, or to the person or finances of those individuals closest to the employee, as a result of dissemination of· information such as what has been requested here.

19. Unfortunately, incidents of physical and sexual threats and assaults against all levels of staff occur periodically, both against staff inside and outside of the actual prison facilities. . . .

20. All employees within the confines of an institution have some level of contact with inmates.

(R.R. 347a–50a.) Major Mirarchi goes on to describe instances of brutal assaults by prisoners within facilities on non-uniformed personnel. (*Id.* at 350a.) He also recounts an event, "years ago," when an upset family member of an inmate appeared at the home of a Corrections press secretary while the employee was at work and his wife and young child were at home. (*Id.* at 351a.)

Major Mirarchi continues:

27. There are countless examples where administrative separations were required to be issued between inmates and staff as a result of threats, stalking and physical assaults. Separations typically result in the inmate being transferred to a different institution, which is often perceived negatively for the inmate who must readjust to a new institution.

28. I am aware of many instances where [Corrections] employees have received threats from inmates that upon their release from prison they will harm the employee and/or their families. These examples extend to both uniform

staff and non-security staff, including Central Office staff.

(*Id.*) Major Mirarchi concludes:

34. Because all Department employees have some level of interaction with inmates and all types of employees have been involved in past instances of threats or physical harm, and for all of the foregoing reasons, the disclosure of the home addresses of the [Corrections] staff is reasonably likely to result in a substantial and demonstrable risk of physical harm to the staff members, their families, and/or other residents of their homes.

(*Id.* 352a.) Other affidavits submitted by Corrections, authored by Major Mirarchi and others, express similar concerns about personal security and safety of specific classes of employees within Corrections. There is no single affidavit that addresses specifically *members of CIVEA* employed by Corrections.

Despite the lack of an affidavit tailored to CIVEA members, Major Mirarchi's principal affidavit, particularly the provisions recounted above, provides a sufficient basis upon which OOR could have concluded that certain CIVEA members, those who are employed within correctional facilities and who have regular and personal interaction with prisoners, are at a heightened risk of potential harm from a disgruntled inmate. To be certain, this class of CIVEA members are subject to potential harm within the prison walls. There is also sufficient, credible evidence within Corrections' submission, however, to support the conclusion that if these employees' home addresses are readily available to disgruntled prisoners through the RTKL, there is a reasonable likelihood of a substantial and demonstrable risk to the individual security of these employees and their families beyond those walls.

For these reasons, we will affirm OOR's determination with respect to members of CIVEA who are employed within correctional facilities and who have regular and personal interaction with prisoners. These employees' names and home/mailing addresses are exempt under Section 708(b)(1)(ii) of the RTKL. Corrections, however, has failed to establish that the names and home/mailing addresses of CIVEA members who do not meet these criteria should be exempt from disclosure under Section 708(b)(1)(ii) of the RTKL.

### B. SERS Appeal

#### 1. *Home/Mailing Addresses of Members of Superannuation Age*

SERS asks that the Court apply the personal security exemption in Section 708(b)(1)(ii) of the RTKL to exempt from disclosure the names and home/mailing addresses of those SERS members who are both superannuated and retired. SERS contends that there is a "substantial and demonstrable risk that some members of this class are especially vulnerable to fraud, financial exploitation, financial abuse or theft." (SERS Br. at 15.) As evidence of this age-related risk of harm, SERS submitted the affidavits of two experts to OOR–Jason Karlawish, M.D., and J. Kenneth Brubaker, M.D.

In a separate appeal from OOR, this Court recently considered SERS' argument and evidence, specifically the Karlawish and Brubaker affidavits, with respect to this class of SERS members. For the reasons set forth in *State Employees' Retirement System v. Fultz*, 107 A.3d 860, 867–71 (Pa.Cmwlth.2015), we conclude that SERS has not met its burden of showing, through the submission of competent evidence, the likelihood of a substantial and demonstrable risk to SERS members and their beneficiaries who are superannuated and retired.

### 2. Law Enforcement Officers

SERS challenges OOR's determination that SERS failed to establish that certain SERS members' home addresses are exempt under Section 708(b)(6)(i)(C) of the RTKL, relating to "[t]he home address of a law enforcement officer or judge." SERS argues that the affidavit of Joseph A. Torta, Director of SERS' Office of Member Services (Torta Affidavit), provides sufficient evidence to support application of the exemption with respect to PFUR's request. SERS believes that OOR's analysis was erroneous, because it was based on the idea that SERS had to identify each law enforcement officer and judge by name to establish the exemption. In addition, SERS contends that evidence submitted by other agencies, individuals, and entities before OOR supports the conclusion that this exemption is implicated by PFUR's request for SERS members' home/mailing addresses.

In response, PFUR claims that it "does not seek the home addresses of law enforcement officers and judges." (PFUR Second Br. at 7.) Rather, PFUR complains that SERS improperly is withholding the names and home addresses of SERS members who formerly served as law enforcement officers and judges. PFUR also complains that SERS may be withholding the names and addresses of SERS members who meet a broader definition of "law enforcement officers or judges" than contemplated by the RTKL exemption. PFUR makes the following suggestion:

> If the spreadsheet of names and home/mailing addresses to be disclosed by SERS contains home addresses of individuals purported to be law enforcement officers or judges, SERS should not withhold both the individuals' names and home addresses, but rather redact the individuals' home addresses. [Section 706 of the RTKL,] 65 P.S. § 67.706.

This will permit PFUR to identify the individuals and raise challenges to the individuals' purported status as law enforcement officers or judges. There is no other way to verify the accuracy of SERS's assertions that an individual is a law enforcement officer or a judge. Furthermore, there is no legitimate basis to withhold the names of law enforcement officers and judges.

(*Id.* at 7–8.) Section 706 of the RTKL provides, in relevant part:

> If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record . . . and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access.

The Torta Affidavit and other information before OOR are adequate to establish that SERS members include law enforcement officers and judges. By law, the *home addresses* of law enforcement officers and judges are exempt from disclosure. Accordingly, SERS may withhold from its response to PFUR the home addresses of its member law enforcement officers and judges. In addition, we note our decision in *Fultz*, where we opined:

> By providing this blanket exemption [for home addresses of law enforcement officers and judges], the General Assembly recognized that the home addresses of these at-risk individuals "should not and, under law, will not be subject to

disclosure." It is clear that the purpose of this unconditional protection afforded to the home addresses of law enforcement officers and judges is to reduce the risk of physical harm/personal security to these individuals that may arise due to the nature of their job duties. Permitting access to the home address of a law enforcement officer or judge in response to a RTKL request seeking the address of a family member or beneficiary of one of these at-risk individuals would erode the purpose of this express exemption. Thus, we hold that the specific exemption set forth in Section 708(b)(6)(i)(C) exempts from access the home addresses of law enforcement officers and judges even when the requester is seeking the address of an individual who also resides at the exempt address. . . .

*Fultz,* 107 A.3d at 866–67 (quoting *Delaware Cnty. v. Schaefer,* 45 A.3d 1149, 1153 (Pa.Cmwlth.2012) (en banc)). Accordingly, the home addresses of law enforcement officers and judges are exempt, regardless of whether that address is tied directly to the law enforcement officer or judge or indirectly through the record of a beneficiary or family member residing in the same household.

Names, however, are not protected under the Section 708(b)(6)(i)(C) exemption. As was the case in *Fultz,* and with the exception of the class of CIVEA members discussed above, SERS here does not allege that disclosure of the names of law enforcement officers and judges, or those within the same household, would be reasonably likely to result in a substantial and demonstrable risk of harm to personal security. *Fultz,* 107 A.3d at 871–72. Accordingly, on remand, SERS shall provide PFUR a list of member names responsive to PFUR's request, as modified by PFUR on January 9, 2014, but whose home/mailing addresses SERS is withholding pursu-

ant to Section 708(b)(6)(i)(C). Before issuing its final determination on remand, OOR shall give PFUR an opportunity to object to this submission. If PFUR objects, OOR shall address the objection(s) in its final determination on remand.

## C. Right to Privacy in Home Address/Due Process

■ Intervenors PSEA and Turnpike Commission argue that Pennsylvania citizens have a constitutional right to privacy in their home addresses that must be considered before mandating disclosure of this information. This Court has already addressed and rejected this argument. *See Office of Lieutenant Governor v. Mohn,* 67 A.3d 123 (Pa.Cmwlth.2013) (en banc); *Office of the Governor v. Raffle,* 65 A.3d 1105 (Pa.Cmwlth.2013) (en banc).

PSEA and Turnpike Commission also raise a concern about the due process rights of individuals whose personal information may be the subject of a request under the RTKL. Based on the record before us, it does not appear that PSEA or Turnpike Commission purport to represent the interests of any of the 34,524 SERS members whose names and home addresses SERS provided to PFUR in response to its RTKL request without first providing its members with notice of and an opportunity to object to PFUR's request. Accordingly, PSEA's and Turnpike Commission's due process concern is not directed to any particular disclosure by SERS in this case; rather, their concern is directed at the RTKL in general and its processes, or lack thereof, to protect the interests of those individuals whose personal information is the subject of a RTKL request.

■ We recently and thoroughly addressed this concern in *Pennsylvania State Education Association ex rel. Wil-*

*son v. Commonwealth, Department of Community and Economic Development,* 110 A.3d 1076 (Pa.Cmwlth.2015) (en banc) (*PSEA IV*). We will not restate the entirety of the Court's analysis in *PSEA IV.* The holding, nonetheless, bears repeating. After noting "the RTKL's lack of a mechanism to ensure that an affected individual has notice and an opportunity to be heard in order to demonstrate that his or her personal information may be exempt from disclosure" under the personal security exemption, we held:

> [W]e declare that an agency, as defined in the RTKL, is prohibited from granting access to an individual's personal address information without first notifying the affected individual and providing that affected individual with an opportunity to demonstrate that disclosure of the requested information should be denied pursuant to the personal security exception as set forth in Section 708(b)(1)(ii) of the RTKL. We further declare that ... OOR is prohibited from granting access to personal address information of an individual who objected to the disclosure of such information pursuant to the personal security exception set forth in Section 708(b)(1)(ii) of the RTKL without first permitting that individual to intervene as of right in an appeal from an agency's denial of a requester's request for access to such information.

*PSEA IV,* 110 A.3d at 1086–87 (footnotes omitted).

## D. PSEA

 In Part VII.C. of its brief, PSEA contends that OOR erred when it failed to honor PSEA's request to withhold the release of the home addresses of all PSEA members who are also members of SERS. The totality of SERS' written argument on this issue comprises a single paragraph on approximately half of a page of PSEA's 26

page brief. PSEA does not cite to any record submission before OOR that would support a blanket exemption for all PSEA/SERS members' home/mailing addresses. Instead, PSEA appears to contend only that because OOR denied access to the home/mailing addresses of the Individual Objectors, even if they failed to provide a basis for their objection in their submission to OOR, OOR should have done the same when PSEA lodged its objection.

PSEA misstates OOR's ruling below with respect to the Individual Objectors. OOR did not hold that every Individual Objector, regardless of the contents of their submission to OOR, was entitled to an exemption under the RTKL with respect to their home/mailing addresses. As noted above, OOR never reviewed the merits of the Individual Objectors' objections to PFUR's request, finding instead that PFUR had waived its request for that information. For reasons set forth above, OOR erred in this regard, and we are remanding to OOR to review the merits of each individual objection filed with OOR. PSEA's contention, then, that its class-based request for an exemption was treated differently than the requests for exemptions filed by the Individual Objectors has no merit.

## E. Game Commission

 Game Commission contends that OOR failed to address the applicability of one of its regulations to PFUR's request. The regulation, which Game Commission promulgated in light of the passage of the RTKL, provides, in relevant part:

> *Personal identifying information.* Any request, the response to which includes personal identifying information will be redacted so as to only provide that information necessary to identify the person to [Game] Commission. Personal identifying information will not be

disclosed as predeliberative, proprietary or tending to result in a substantial and demonstrable risk of physical harm to the person or the personal security of an individual and will not be disclosed without due process of law authorizing and ordering the disclosure.

58 Pa.Code § 131.9. Game Commission argues that this regulation serves as an additional exemption from disclosure of its employees' home addresses under the RTKL. Specifically, it cites a portion of the RTKL definition of "public record" that defines a public record to exclude a record that is "exempt from being disclosed under any other Federal or State law *or regulation* or judicial order." Section 102 of the RTKL, 65 P.S. § 67.102 (emphasis added).

There are several reasons why we reject Game Commission's position. First, the regulation is poorly drafted. As written, the first sentence appears to require the redaction of "[a]ny request" made to the Game Commission under the RTKL if "the response ... includes personal identifying information." It does not provide for the redaction or exemption of information responsive to a request under the RTKL. Second, and assuming as Game Commission does that the language authorizes the redaction of information from a RTKL response, the regulation mostly tracks exemptions that exist in the RTKL relating to personal security (Section 708(b)(1)(ii) of the RTKL), predecisional deliberations (Section 708(b)(10)(i) of the RTKL, 65 P.S. § 67.708(b)(10)(i)), and proprietary information (Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11)). Accordingly, the regulation does not provide for an exemption in addition to and separate from the

exemptions set forth in Section 708 of the RTKL.[13] Finally, this regulation only relates to how Game Commission handles a RTKL request. The request at issue here is a request under the RTKL to SERS, not to Game Commission.

Next, Game Commission argues that all of its employees' home addresses should be protected under the RTKL personal security exemption. Because the home addresses of law enforcement officers employed by Game Commission are exempt from disclosure under Section 708(b)(6)(i)(C) of the RTKL, Game Commission's personal security exemption argument relates to Game Commission's other employees. PFUR responds, however, that Game Commission's submission to OOR is insufficient to support an agency-wide exemption of the names and home/mailing addresses for Game Commission's employees. PFUR relies on reported decisions from this Court in *Carey v. Department of Corrections*, 61 A.3d 367 (Pa.Cmwlth.2013), and *Office of Governor v. Scolforo*, 65 A.3d 1095 (Pa.Cmwlth.2013), in support of its position.

Although OOR considered and ruled on the application of the personal security exemption to members of CIVEA, OOR did not consider Game Commission's request to exempt the names of all of its non-law enforcement employees from disclosure under the same exemption. Accordingly, OOR should consider on remand the adequacy of Game Commission's submission and rule on the applicability of the exemption to the names and home/mailing addresses of Game Commission's non-law enforcement employees.

---

**13.** It seems to us that in order for an agency to create by regulation an exemption for a record that is otherwise subject to disclosure under the RTKL and that would apply to all RTKL requests, regardless of the recipient of the request, the agency would need statutory authority to create such an exemption. Because we do not construe Game Commission's regulation as creating a new exemption, we need not consider the question of whether Game Commission has such authority.

## IV. CONCLUSION

For the reasons set forth above, with respect to PFUR's appeal, we reverse OOR's determination that PFUR waived its request for the names and home/mailing addresses of the Individual Objectors. We remand to OOR to consider the merits of the Individual Objectors' submissions. We conclude that PFUR's procedural challenges to OOR's handling of third-party participation requests either lack merit or are moot. We affirm OOR's determination that the names and home/mailing addresses of members of CIVEA are exempt under Section 708(b)(1)(ii) of the RTKL, but only with respect to the names and home/mailing addresses of CIVEA members who are employed within correctional facilities and who have regular and personal interaction with prisoners.

With respect to SERS' appeal, we affirm OOR's determination that SERS has not met its burden, through the submission of competent evidence, that the names and home/mailing addresses of SERS members and their beneficiaries who are superannuated and retired should be exempt under Section 708(b)(1)(ii) of the RTKL. We reverse OOR's determination that SERS failed to meet its burden of establishing applicability of Section 708(b)(6)(i)(C) of the RTKL. On remand, SERS shall provide PFUR a list of member names responsive to PFUR's request, as modified by PFUR on January 9, 2014, but whose home/mailing addresses SERS is withholding pursuant to Section 708(b)(6)(i)(C) of the RTKL. Before issuing its final determination on remand, OOR shall give PFUR an opportunity to object to this submission. If PFUR objects, OOR shall address the objection(s) in its final determination on remand.

The argument of Intervenors PSEA and Turnpike Commission that Pennsylvania citizens have a constitutional right to privacy in their home addresses is rejected, consistent with this Court's precedent on this question. Moreover, their concern regarding due process was addressed by the Court in *PSEA IV*. PSEA's argument that OOR erred when it failed to honor PSEA's request to withhold the release of the home addresses of all PSEA members who are also members of SERS is without merit.

Finally, we reject Game Commission's contention that its regulation, 58 Pa.Code § 131.9, exempts the names and home/mailing addresses of its employees from disclosure by SERS in response to PFUR's RTKL request. On remand, OOR is directed to consider Game Commission's submission on the merits as to the applicability of Section 708(b)(1)(ii) of the RTKL.

### *ORDER*

AND NOW, this 20th day of March, 2015, we affirm in part and reverse in part the final determination of the Pennsylvania Office of Open Records (OOR) and remand this matter to OOR for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.