# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jean Crocco,                                    :
                      Petitioner         :
                                  :
            v.                              :    No. 1085 C.D. 2018
                                  :    Argued: June 3, 2019
Pennsylvania Department of Health,              :
                  Respondent         :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE SIMPSON**                **FILED: JULY 11, 2019**

        Jean Crocco of the Pro-Life Action League (Requester) petitions for review from a Final Determination by the Office of Open Records (OOR) upholding the Department of Health's (DOH) redaction of professional license numbers and names of individuals on abortion facility applications under the personal security exception of the Right-to-Know Law (RTKL),[1] 65 P.S. §67.708(b)(1)(ii). Requester argues the evidence was not connected to specific individuals and so does not show a threat to their personal security. She also asserts the names are unconditionally public under the Health Care Facilities Act (HCFA).[2] DOH and abortion service providers that participated before OOR counter that the information was properly redacted based on documented violence and harassment against individuals who serve abortion facilities. They assert Requester waived any arguments that she did not raise in her appeal to OOR. Based on the thorough record developed by OOR, and the demonstrated risks involved, we affirm OOR's final determination.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] Act of July 19, 1979, P.L. 130, as amended, 35 P.S. §§448.101-448.904b.

# I. Background

Requester submitted a RTKL request to DOH seeking certain registration and licensing applications for all of the non-hospital abortion facilities in Pennsylvania (Request). DOH partially denied the Request, redacting names and license numbers of health care practitioners and names of the leadership of the facilities under the personal security exception in Section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii). DOH also redacted personal email addresses and postal addresses under Section 708(b)(6)(i)(A) of the RTKL, 65 P.S. §67.708(b)(6)(i)(A).

Requester appealed to OOR, challenging the redaction of professional license numbers and names of health care practitioners (physicians, medical directors, and directors of nursing) and names of leadership (administrators, owners, trustees, board members) under the personal security exception. She emphasized she lacked nefarious intent despite acting on behalf of the Pro-Life Action League.

OOR developed the record, directing DOH to inform interested third parties of the Request and their ability to participate pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c). DOH then informed non-hospital abortion providers. The following requested direct interest participant status: Drexel University College of Medicine OB/GYN Associates (Drexel); Delaware County Women's Center (DCWC); Mazzoni Center Family & Community Medicine (Mazzoni); Planned Parenthood Keystone (PPK); Planned Parenthood of Southeastern Pennsylvania (PPSP); Berger and Benjamin (B&B); Allegheny Reproductive Health Center (ARHC); Allentown Women's Center (AWC); Philadelphia Women's Center (PWC); and Planned Parenthood of Western Pennsylvania (PPWP) (collectively, Providers). OOR granted the requests and Providers participated.

2

Importantly, before OOR, DOH raised additional exemptions, namely the Abortion Control Act, 18 Pa. C.S. §§3201-3220, the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. In support, DOH submitted the sworn affidavit of Garrison Gladfelter, the DOH's Chief of Division of Acute and Ambulatory Care (DOH Affidavit). Reproduced Record (R.R.) at 35a-38a. DOH referenced reports and statistics regarding the dangers faced by medical providers and those serving abortion facilities, including the National Abortion Federation (NAF) report "2017 Violence and Disruption Statistics," R.R. at 46a-51a (NAF Report), "The Disturbing Rise of Cyberattacks Against Abortion Clinics," id. at 52a-60a, and "Aftershocks: The Impact of Clinic Violence on Abortion Services," id. at 61a-117a (Rand Report).

As direct interest participants in the appeal before OOR, Providers submitted argument and evidence in support of DOH's denial.[3] Specifically, Providers submitted declarations of Providers' leadership as follows: the Clinical Director of ARHC; the Executive Director of AWC; the Executive Director of B&B; the President of both the PWC and DCWC; the CEO of Mazzoni; the President and CEO of PPK; the President and CEO of PPSP; and the President and CEO of PPWP. See R.R. at 177a-91a, 196a-207a. In addition, David Cohen, Esquire, former staff attorney with the Women's Law Project in Philadelphia, provided an affidavit. See R.R. at 208a-211a. Providers also submitted affidavits of Dr. Owen Montgomery (on behalf of Drexel) (R.R. at 26a-30a), and an affidavit of Lisa Brown, Esquire, NAF General Counsel and Senior Policy Director (R.R. at 212a-14a).

---

[3] Other than Drexel, Providers are represented by the Women's Law Project.

Providers also submitted articles about the Pro-Life Action League, and a note mailed to an abortion provider signed on behalf of the League. Referencing a practitioner's arrest the note stated: "Could <u>you</u> be next? If you want to get <u>out</u> of the abortion business, give me a call." R.R. at 194a (emphasis in original). The mailing included a set of handcuffs. R.R. at 195a (photo of handcuffs).

OOR then allowed Requester to respond to Providers' submissions with additional argument or evidence. In her submission, Requester refuted the personal security exception and the Abortion Control Act as grounds for redaction. Notably, she did not submit evidence rebutting Providers' security concerns or cite a statutory basis for disclosure without redaction. Instead, she asserted disclosure of the names and license numbers was in the public interest She also submitted an affidavit attesting to her intention to use the information as she had when obtained in other states, purportedly to ensure proper patient care by licensed professionals.

Based on the record, OOR upheld DOH's redactions under the personal security exception in Section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii). <u>Crocco v. Dep't of Health</u>, OOR Dkt. No. AP 2018-0778 (issued July 13, 2018) (Final Determination). R.R. at 284a-94a. It found the release of names and license numbers of those who serve abortion facilities as health care practitioners or as leaders would threaten those individuals' personal security based on the well-documented harassment to which such individuals are subject. OOR credited Providers' evidence about threats and harassment toward individuals affiliated with abortion facilities both at the facilities and off site. OOR also concluded the Abortion Control Act did not protect the information as the statute applied only to abortion reports filed thereunder.

4

Requester sought reconsideration of the Final Determination, asserting for the first time that the records were public as a matter of law under Section 806(e) of HCFA, 35 P.S. §448.806(e) (regarding disclosure of 5% of facility owners, officers and board members). R.R. at 297a. She also asserted that the License Application Forms state the forms are public records for any facility that received state funds during the prior 12 months. Without reference to the record, she represented Drexel and Mazzoni received such funds. OOR denied reconsideration as her allegations implicated evidence outside the record.

Requester timely petitioned for review from the Final Determination to this Court.[4] Following motions practice, this Court granted intervenor status to Providers. After extensive briefing and argument, we consider the matter.

## II. Discussion

Records in an agency's possession are presumed public unless exempt under an exception in Section 708(b) of the RTKL, a privilege, or another law. Section 305(a) of the RTKL, 65 P.S. §67.305(a); Carey v. Dep't of Corr, 61 A.3d 367, 371-72 (Pa. Cmwlth. 2013). The RTKL does not "supersede or modify the public or nonpublic nature of a record or document established in … State law …." Section 306 of the RTKL, 65 P.S. §67.306. Here, DOH raised the personal security exception in Section 708(b)(1)(ii) of the RTKL, and the Abortion Control Act as a statutory exemption.

---

[4] This Court may review appeals involving Commonwealth agencies on the existing record and defer to OOR as the initial fact-finder. Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823 (Pa. Cmwlth. 2014) (en banc). Our review of matters of law is plenary. Id.

The burden of proving that a record of an agency is exempt from public access is upon the agency receiving the request by a preponderance of the evidence. Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1). Direct interest participants are likewise subject to this burden to prove any exemptions they assert. See Global Tel*Link Corp. v. Wright, 147 A.3d 978 (Pa. Cmwlth. 2016). In this context, we define a preponderance of the evidence as "a more likely than not inquiry." Borough of Pottstown v. Suber-Aponte, 202 A.3d 173, 180 n.11 (Pa. Cmwlth. 2019).

On appeal, Requester argues OOR erred in concluding the personal security exception protects the redactions. She challenges the statistical evidence as inapplicable, questioning its accuracy as well as the averments contained in the affidavits. Requester urges this Court to reassess the evidence and to take judicial notice of certain web pages to discredit Providers' security concerns. In addition, she contends the redacted information is public under HCFA.

Emphasizing the fact-heavy evidentiary record, DOH responds that license numbers and names of those who serve abortion facilities are protected by the personal security exception in Section 708(b)(1)(ii) of the RTKL. DOH also argues that identities of medical practitioners are expressly protected by the Abortion Control Act. Providers add that disclosing the identities of those who perform abortions would undermine the confidentiality protection afforded to medical providers in the Abortion Control Act. DOH and Providers maintain Requester waived her arguments, that names are public under HCFA and because some names appear on Providers' websites, as she did not raise them before OOR.

6

## A. Waiver

First, we consider whether Requester is limited to the arguments she raised to OOR, the fact-finder, during the appeals officer stage. DOH and Providers argue that any arguments not raised to OOR were waived. We agree.

Section 1101(a) of the RTKL provides Requester's "appeal shall state the grounds upon which the requester asserts that the record is a public record." 65 P.S. §67.1101(a); Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823, 827 n.4 (Pa. Cmwlth. 2014) (citation omitted). A requester waives arguments that are not raised in her Section 1101 appeal. Padgett v. Pa. State Police, 73 A.3d 644 (Pa. Cmwlth. 2013); Dep't of Corr. v. Office of Open Records, 18 A.3d 429 (Pa. Cmwlth. 2011).

Further, this Court determined that, in the RTKL context, arguments not raised to the fact-finder are waived. Levy v. Pa. Senate, 94 A.3d 436, 442 (Pa. Cmwlth. 2014) (in "RTKL proceedings, [fact-finding] will occur at the appeals officer stage, and a reviewing court will defer to the findings of the appeals officer."). Absent unusual circumstances or a deficient record, neither of which exist here, this Court declines to serve as fact-finder, and relies on the record created before OOR. Heltzel. As such, our review is limited to the issues presented in the appeals officer stage.

### 1. HCFA

Requester did not raise HCFA to OOR as a basis for public record status in her appeal as Section 1101(a) of the RTKL requires. Indeed, she cited no specific part of HCFA until *after* OOR issued its Final Determination, following the fact-finding stage. As a result, "that ground is waived." Heltzel, 90 A.3d at 827 n.4.

7

Regardless of waiver, it is not clear that the HCFA provision cited renders the names and license numbers public. Section 806(e) of HCFA states as follows:

> (e) **Public disclosure.** [DOH] shall require disclosure of the persons owning 5% or more of the health care facility as well as the health care facility's officers and members of the board of directors.

35 P.S. §448.806(e) (underline added). It contains no reference to the RTKL, nor an unconditional statement that applications for licensure are public. Importantly, the provision does not confer public record status on any specific information. While it states that "[DOH] shall require disclosure," it does not specify to whom, or how the information shall be disclosed. It is conceivable that the provision means disclosure by the provider to DOH as a condition of obtaining a license.

In addition, one of the express reasons for licensure under HCFA is for a health care facility to qualify as a provider of medical assistance services. 35 P.S. §448.806(a) ("Licensure required"). There is a public interest in disclosing identities of those that receive public funds by providing medical assistance services generally. However, pursuant to Section 3215(c) of the Abortion Control Act, 18 Pa. C.S. §3215(c), commonly referred to as the Pennsylvania coverage ban, the expenditure of state and federal funds for the performance of an abortion is specifically prohibited, unless the procedure is necessary to avert the death of the pregnant woman, or the pregnancy is caused by rape or incest. Thus, in the vast majority of circumstances, public funds would *not* be received by facilities where abortions are performed. The public interest in disclosing the identities of those who own and control those facilities that do not receive public funds is unclear.

8

Nevertheless, the factual predicate for disclosure of names of persons owning 5% or more of facilities is notably absent from this record. Requester does not indicate how the 5% overlaps with the identities of licensed practitioners and others affiliated with Providers whose names were redacted. That would have required some fact-finding during the proceedings before OOR, the fact-finder here. Levy. Requester made no attempt to create a record to document this proffered basis for public status of the information in the appeals officer stage.

Moreover, the redactions also included practitioner license numbers. However, HCFA is silent as to the public status or disclosure of license numbers. Section 806(e) of HCFA, 35 P.S. §448.806(e).

Because she did not raise the issue while the matter was pending before OOR, Requester waived her argument that the information is public under HCFA.[5]

### 2. Judicial Notice of Web-Sourced Names

Additionally, for the first time in her appeal to this Court, Requester asserts that Providers' principals lack a genuine interest in protecting their names from disclosure because some individuals' names appeared on certain web pages. However, Requester failed to raise this argument during the appeals officer stage when OOR afforded her the opportunity to do so. Nor did she submit any evidence to refute Providers' security claims at that time or otherwise develop the record before OOR, the fact-finder here, to support such an argument. Consequently, Requester waived this argument for failing to raise it to the fact-finder. Levy.

---

[5] As Requester cites nothing in HCFA that renders the requested information unequivocally public, this Court is not in a position to review the statutory exemption as a matter of law.

9

Notwithstanding her neglect to raise this issue to OOR, Requester urges this Court to serve as fact-finder and take judicial notice of web pages and a public presence for certain individuals allegedly affiliated with abortion facilities. Pet'r's Br. at 14-16. In our view, judicial notice of such purported facts is inappropriate here.

Courts may take judicial notice of matters that are not reasonably disputed. Pa.R.E. 201(b). "[J]udicial notice is generally exercised when the fact is so well known that formal introduction of evidence in support of it is unnecessary." Castello v. Unemployment Comp. Bd. of Review, 86 A.3d 294, 299 (Pa. Cmwlth. 2013) (citation omitted). It is not a substitute for a party's obligation to submit evidence to OOR. Governor's Office of Admin. v. Pennsylvanians for Union Reform, Inc., 105 A.3d 61 (Pa. Cmwlth. 2014) (declining to take judicial notice of record developed in separate OOR appeal).

First, Requester cites no authority for taking judicial notice of web pages of non-governmental entities. Second, we are circumspect in doing so when Requester offers no indication as to the accuracy of the web-sourced information upon which she relies. We are persuaded by our sister appellate court's view: "While recognizing that the Internet is a wonderful source of information, it also may contain incomplete or incorrect information. We have no idea when the website was established or how frequently it is updated." O'Donnell v. McDonough, 895 A.2d 45, 50 (Pa. Super. 2006) (upholding trial court's decision against taking judicial notice of a business's registered office as stated on Department of State website).

Third, the purported facts Requester wants noticed are names of individuals holding certain positions with Providers. As Providers were careful to retain their anonymity, the names are not of record. Also, during argument, counsel for Providers advised this Court that the individuals were not all correctly identified.

As the facts Requester wants noticed are not only contested, but also not generally known and from unverified sources, we decline to take judicial notice of them. As such, in addition to waiving the argument for failure to raise it to OOR, Requester lacks evidence to support her contentions that individuals serving Providers reveal their identities, and so lack a genuine security concern tied to their disclosure.

**B. Merits**

Based on the existing record, we consider the merits. DOH asserted only two exemptions to support redaction of names and license numbers: (1) the personal security exception, Section 708(b)(1)(ii); and (2) the Abortion Control Act. OOR concluded DOH established the personal security exception as to the redactions, but it determined the Abortion Control Act did not apply.

**1. Personal Security Exception**

Section 708(b)(1)(ii) of the RTKL exempts records from public access that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii). The personal security exception "embraces two notions: risk of physical harm and the risk to one's personal security." Delaware Cty. v. Schaefer, 45 A.3d 1149, 1154 (Pa. Cmwlth. 2012) (en banc); see also Peterson v. Dep't of Corr. (Pa. Cmwlth., No.

11

1786 C.D. 2015, filed July 28, 2016), 2016 WL 4065565 (unreported) (report of inmate's murder of cell mate exempt under personal security exception).

While the RTKL does not define "substantial and demonstrable," we interpret this language to mean "actual or real and apparent." Governor's Office of Admin. v. Purcell, 35 A.3d 811 (Pa. Cmwlth. 2011). Mere conjecture does not suffice. Carey. We must consider whether submitted proof includes detailed information describing the records requested, and connecting the records to the likelihood that disclosing them would threaten personal safety in the manner described. Id.

As DOH notes, "[i]ntimidation and violence toward abortion providers commonly occurs and has been recently escalating." DOH Br. at 12. The record here contains substantial evidence of past physical attacks and harassment of personnel of abortion clinics. See R.R. at 26a-30a, 177a-91a, 196a-214a. Providers submitted more than 10 statements from individuals familiar with the risks involved in providing abortion services. Among the averments, there are substantiated facts regarding protests outside abortion facilities (R.R. at 177a), that the facilities receive harassing calls (R.R. at 178a), that staff are regularly threatened and harassed, (R.R. at 181a) vandalism and firebombing of facilities (R.R. at 178a), and assault on volunteers and patients.

In addition to the many declarations, statistical evidence corroborates these allegations. See NAF Report; Rand Report. Organizations track incidents (violence and harassment) which buttress claims of actual harm and demonstrable risk to personal security of individuals who serve abortion facilities in some capacity.

12

We discern no merit in Requester's argument that OOR erred in relying on statistical evidence contained in the NAF Report and Rand Report. Requester contends the Reports are hearsay and she alludes to bias by trade organizations.

Requester's challenges are to the weight of the evidence, not its admissibility. This Court consistently holds affidavits are sufficient to prove an exemption. Heavens v. Dep't of Envtl. Prot., 65 A.3d 1069 (Pa. Cmwlth. 2013); Sherry v. Radnor Twp. Sch. Dist., 20 A.3d 515 (Pa. Cmwlth. 2011). We also deem the opinions of persons with relevant background and experience, that include sufficient certainty, constitute competent evidence. Purcell; see also Mission Pa., LLC v. McKelvey, __ A.3d __ (Pa. Cmwlth., Nos. 185-190 C.D. 2018, filed June 4, 2019) (en banc).

Further, Requester disregards that the record does not consist of statistics alone. Several declarations and affidavits substantiate the threats faced by individuals who serve abortion facilities, whether in a patient care or in a leadership capacity. Indeed, the statistics corroborate the statements of those who observed or experienced the risks, threats posed and harm suffered based on their work with abortion providers.

This Court also previously acknowledged the relevance of statistical evidence to show risks or the likelihood of harm based on past incidents of harm. See Purcell (serving as the fact-finder and deeming statistical reports persuasive of risk in identity theft from release of full birth dates). Evidence of prior threats to specified individuals is not required to establish the personal security exception. Id.

13

Contrary to Requester's characterization, this Court has not held that specified individuals must show they are the target of physical harm to prove this exception. The exception does not require each individual to allege the security risk disclosure poses to them personally. Purcell. When the exception uses the phrase "personal security of an *individual*" it is to distinguish the interest from a business. Section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii)(italics added).

Additionally, an agency may apply the personal security exception on a categorical basis where appropriate.[6] Purcell. Notwithstanding that "the personal security exception does not specifically provide for a blanket exception for certain classes or large groups of individuals[,] ... an agency may establish the existence of an exception covering a large group of individuals based upon evidence that establishes that the release of certain information poses a likelihood of a substantial and demonstrable risk to the personal security of that group of individuals." State Emps.' Ret. Sys. v. Fultz, 107 A.3d 860, 866–67 (Pa. Cmwlth. 2015) (citing Purcell; deeming categorical evidence as to vulnerability of individuals over age 60 insufficient). Cf. Lutz v. City of Phila., 6 A.3d 669, 676 (Pa. Cmwlth. 2010) (rejecting personal security exception when one witness testified generally that police officers' families are frequently threatened).

Unlike the affidavits we rejected in Fultz, the verified statements here do not merely parrot the personal security exception. Nor are they predicated on

_____

[6] This Court rejects Requester's contention that DOH imposed an "unpromulgated policy" by applying the personal security exception on a categorical basis to individuals serving abortion facilities. Pet'r's Reply Br. at 1. The exception, not the policy, was DOH's ground for denial cited pursuant to Section 903 of the RTKL, 65 P.S. §67.903. OOR agreed with DOH's application of the exception, and it is OOR's Final Determination before us now. Thus, Requester's charge is beyond the scope of this RTKL appeal.

assumptions as to unproven characteristics of a broad group of people. Rather, Providers' submissions contain specific averments of actual harm threatened to those serving abortion facilities. The shared characteristic is the performance of services to abortion facilities in some capacity. The evidence demonstrates that such service entails certain security risks. There is no evidence refuting this commonality.

Moreover, the RTKL expressly recognizes categorical application of an exception based on the services an individual performs for a certain type of entity. For example, Section 708(b)(6)(i)(C) of the RTKL provides a "blanket exemption" to home addresses of judges and law enforcement as "at-risk individuals" based on the functions they serve. Fultz, 107 A.3d at 866-67 (citing Schaefer). The reason for the blanket exemption "is to reduce the risk of physical harm/personal security to these individuals that may arise due to the nature of their job duties." Id. at 867.

We acknowledge that this Court has not upheld the withholding of names alone under the personal security exception, except when presented with risks inherent in prison settings. See, e.g., Peterson (noting disclosure of names of involved corrections officers presented demonstrable threat to officers' personal security); Stein v. Office of Open Records (Pa. Cmwlth., No. 1236 C.D. 2009, filed May 19, 2010), 2010 WL 9511592 (unreported) (protecting first names of corrections officers for security reasons). Allowing the redaction of names, even of private individuals, is rarely permitted. See, e.g., McKelvey (not permitting redaction of names of principals of medical marijuana licensees). However, given the allegations of significant harm to individuals who serve abortion providers in some capacity, application of the security exception is warranted.

15

This case is similar to Stein in that it involves a group of individuals who are targeted based on the function they perform and/or the type of entity they serve. In Stein, the commonality was the performance of correction officer duties for state correctional institutions. The performance of that function for a specific type of entity made the individuals targets for harassment and actual harm. The observed, anecdotal and statistical harm established in this record is, in some cases severe, involving threats with an assault rifle, firebombing, and crashing of a vehicle into a facility.

Further, in Stein, we allowed the redaction of first names despite that the individuals worked for the Commonwealth and were paid with Commonwealth funds. By contrast, in this case, it bears emphasis that the individuals whose names are requested are not state employees and, if paid, should not be paid with state funds. See 18 Pa. C.S. §3215. Thus, unlike Stein, the name involved is not a component of a "financial record" that is public under the RTKL.[7]

The legal landscape recognizes abortion providers are threatened, particularly those licensed to perform the abortion. That is one reason that disclosure of information "obtained from [abortion] reports" is a misdemeanor of the third degree under the Abortion Control Act, 18 Pa. C.S. §3214(e)(4).

Past incidents against abortion facilities and individual providers reflect a thankfully rare circumstance where administering a type of medical care attracts death threats. Statistical evidence and the credited statements of record in

---

[7] Section 102 of the RTKL defines "financial record" to include payments to an employee, "including the name and title" of the employee. 65 P.S. §67.102.

16

combination suffices to satisfy the "more likely than not" standard that applies to Section 708(b) exceptions. Suber-Aponte, 202 A.3d at 180 n.11; see Section 708(a) of the RTKL, 65 P.S. §67.708(a). Therefore, this Court concludes that OOR did not err in determining that DOH established the personal security exception applied to names of those who serve abortion facilities.

## 2. Abortion Control Act

In the interest of completeness, we also address the statutory exemption asserted.[8] DOH and Providers argue Section 3214 of the Abortion Control Act extends protection to abortion providers' names and license numbers.

Section 3214 provides: "Reports filed pursuant to subsection (a) or (h) [of this section] shall not be deemed public records [under the RTKL] and shall remain confidential, except that disclosure may be made to law enforcement officials upon an order of a court of common pleas after application showing good cause therefor. The court may condition disclosure of the information upon any appropriate safeguards it may impose." 18 Pa. C.S. §3214(e)(2) (emphasis added). Thus, confidentiality is reserved to information obtained from abortion reports submitted under the statute. Id.

Abortion reports include the name(s) of physicians who performed the abortion as well as personal and medical information of patients receiving abortion services. 18 Pa. C.S. §3214(a). The protection depends on the source of the

---

[8] Although DOH asserted privacy rights under the federal and state constitutions to OOR, since OOR did not analyze them, and neither DOH nor Providers briefed these constitutional protections, they are waived. Mun. of Mt. Lebanon v. Gillen, 151 A.3d 722 (Pa. Cmwlth. 2016).

information as opposed to stating the information itself (i.e., identity of physician performing abortion) is not public. Thus, to the extent the information is provided in a document other than an abortion report, such as the facility license applications Requester sought here, the Abortion Control Act does not protect it.

Further, the Abortion Control Act does not prohibit disclosure of, or otherwise protect professional license numbers. Therefore, OOR did not err in concluding the statute did not exempt disclosure of the redacted information.

## C. Requester Intent/Identity

Requester also contends that she does not pose a security risk to the professionals or others affiliated with abortion facilities. She insists she desires to ensure properly licensed professionals provide the best care to those receiving abortion services. Indeed, she makes a public policy argument that disclosing names and license numbers of health care professionals is in the public interest to ensure proper patient care.

Our RTKL jurisprudence is clear – when a record is public for one, it is public for all. Padgett v. Pa. State Police, 73 A.3d 644 (Pa. Cmwlth. 2013). A "requester's motivation for making a request is not relevant, and [her] intended use for the information may not be grounds for denial." Id. at 647 (citing Sections 301(b) and 703 of the RTKL, 65 P.S. §67.301(b), §67.703); see also Hunsicker v. Pa. State Police, 93 A.3d 911 (Pa. Cmwlth. 2014). An explanation of why a requester believes an agency should disclose records to her does not satisfy the statutory requirement in Section 1101(a) to explain why the records are public and available to everyone.

18

Requester's sworn statement that she is not a threat does not alter the threat to personal security of individuals implicated by disclosing their identities. Although this particular requester may not pose a danger to the individuals whose names she seeks, once the information is deemed public, it is in the public domain and accessible to everyone on the same basis. Padgett.

Additionally, to the extent Requester seeks disclosure in the public interest, DOH may decline to so exercise its discretion. Section 506(c) of the RTKL, 65 P.S. §67.506(c).[9] In this case, Providers attested to their security concerns and interest in maintaining confidentiality of their identities. See R.R. at 177a-91a, 196a-211a. DOH may not waive an exemption asserted and substantiated by a third party. Dep't of Educ. v. Bagwell, 131 A.3d 638 (Pa. Cmwlth. 2016).

### III. Conclusion

The Court intends this holding to be rare and limited to the unusual circumstances established by the extensive record in this case. For the foregoing reasons, we affirm OOR's Final Determination.

ROBERT SIMPSON, Judge

___

[9] Section 506(c)(3) of the RTKL provides: "An agency may exercise its discretion to make any otherwise exempt record accessible for inspection and copying … if … the agency head determines that the public interest favoring access outweighs any individual, agency or public interest that may favor restriction of access." 65 P.S. §67.506(c)(3).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jean Crocco,                          :
                        Petitioner    :
                                      :
            v.                        :    No. 1085 C.D. 2018
                                      :
Pennsylvania Department of Health,    :
                        Respondent    :

# **O R D E R**

**AND NOW**, this 11ᵗʰ day of July, 2019, the Final Determination of the Office of Open Records is **AFFIRMED**.


_____
ROBERT SIMPSON, Judge